# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PRINCESS DENNAR, M.D.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 2:20-cv-2679** |
| **THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND** | * | **JUDGE GREG GERARD GUIDRY** |
| | * | **MAGISTRATE JUDGE KAREN WELLS ROBY** |

## OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS AND RULE 12(f) MOTION TO STRIKE

**MAY IT PLEASE THE COURT:**

Plaintiff, Princess Dennar, M.D. ("Dr. Dennar"), through undersigned counsel, respectfully submits this Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike.  (Rec. Doc. No. 4).

## I.    BACKGROUND

Dr. Dennar is the first and only black female residency Program Director in the Tulane School of Medicine.[1]  Dr. Dennar commenced her employment with Tulane in January, 2008, as an Assistant Professor.  She assumed the role of Medical Director of Internal Medicine Residency Ambulatory Services.  In 2009, Dr. Dennar assumed the role of the Co-Program Director of the Medicine Pediatrics Residency Program ("Med-Peds").[2]  Over ten years later, Dr. Dennar remains an Assistant Professor.[3]  She currently serves as Program Director of Med-Peds and as the Medical

---

[1] Rec. Doc. No. 1, ¶ 3.

[2] *Id.* at ¶ 1.

[3] *Id.* at ¶

00573335.WPD;1

Director of Tulane Primary Care Clinic at University Medical Center.[4]  Throughout her employment with Tulane, Dr. Dennar has been subjected to acts of gender and race based discrimination and an ongoing and retaliatory hostile work environment.  Tulane's ongoing unlawful conduct has adversely impacted her employment, program, position, duties, responsibilities, authority, assignments, service, pay, and ability to independently run and recruit residents into the program.[5]

Tulane has subjected Dr. Dennar to adverse employment actions, including its failure to timely promote Dr. Dennar from Assistant Professor to the rank of Associate Professor.[6]  Tulane has further subjected Dr. Dennar to an ongoing race based and retaliatory hostile work environment.  The ongoing hostile work environment commenced early on, in 2008, when Dr. Dennar originally interviewed for a directorship at Tulane.  Dr. Dennar was advised by then Chair of the Internal Medicine Department, and now Dean of the Tulane School of Medicine, Lee Hamm, that Tulane did not "want to change the face of Tulane" and that "I'm afraid that white medical students wouldn't follow or rank favorably a program with a black program director; [however] will be comfortable with you sharing a position as co-director with the previous [white male med-peds] program director."[7]  Based on this reasoning, Dr. Dennar was required to share a 50% title as Co-Director, when in fact Dr. Dennar did 100% of the supervisory and program planning work.  The shared

---

[4]*Id.*  11.

[5]*Id.*, at ¶ 14.

[6]*Id.* at ¶ 16.

[7]*Id.* at ¶ 17.

directorship role was created for the sole purpose of masking Dr. Dennar's leadership of the Program.[8]

Dr. Dennar performed the work of a Program Director, but because she was a black female, Tulane initially declined to give her to title Program Director.  Approximately one year later, Dr. Dennar finally assumed the role as the sole Director of the Med-Peds Residency Program.  However, the management and supervision of the Med-Peds Program was shifted to the Internal Medicine Program Director.[9]  This blatant subversion of Dr. Dennar's authority as Program Director continued and remains, to date.  Dr. Dennar has been subjected to and continues to be subjected to a race based hostile work environment.

Dr. Dennar has also been the victim of retaliation and ongoing retaliatory hostile work environment.  She engaged in protected activity.  On June 16, 2017, Dr. Dennar engaged in protected activity when she served as a witness in support of her then Program Coordinator's race based claims of discrimination against a Tulane Program Manager.[10]  Tulane's discriminatory practices continued and were wide spread. In April of 2018, seven black female Med-Peds residents asserted claims of discrimination against Dr. Wiese with Tulane's Office of Institutional Equity ("OIE").  Notably, the adverse effects of discrimination on these students could potentially affect their performance outcomes which would have reflected upon Dr. Dennar as Program Director.  Dr. Dennar herself filed a similar but separate complaint arising out of the race and gender based discrimination

---

[8]*Id.* at ¶ 18.

[9]*Id.* at ¶ 20.

[10]*Id.* at ¶ 23.

perpetuated by Tulane through Dr. Wiese.[11] Dr. Dennar's complaint concerned: Disparate treatment

of her minority residents in the Med-Peds Program;[12] Tulane's ongoing insistence upon subverting

Dr. Dennar's authority to perform her responsibilities as the Med-Peds Program Director;[13] Tulane's

discriminatory practice in identifying potential residents using the ATLAS tool which is structured

to adversely impact graduates from traditionally black accredited medical colleges;[14] Tulane's

repeated efforts to undermine Dr. Dennar's leadership and authority by depriving her of her position

as the Medical Director of the Internal Medicine Residency Ambulatory Clinic;[15] and Tulane's

retaliation against Dr. Dennar for engaging in the protected activity of complaining about the

discriminatory effects in the application of the ATLAS tool which adversely and disproportionately

affects minority residency candidates.[16]

After engaging in protected activity, Dr. Dennar became the target of retaliation and

continued to be subjected to an ongoing hostile work environment.[17] In February, 2018, Dr. Wiese,

Director of the Internal Medicine Residency Program, continued to subvert Dr. Dennar's authority

---

[11]*Id.* at ¶¶ 30-31.

[12]*Id.* at ¶ 31 (1-3).

[13]*Id.* at ¶ 31 (4).

[14]*Id.* at ¶ 31 (4).  Specifically, because the traditionally black accredited medical colleges were at the "bottom of the list" in ATLAS, the use of ATLAS placed minority residency candidates graduating from black accredited medical schools at a disadvantage thereby depriving them of an equal opportunity to match residency at Tulane.  Tulane's use of ATLAS disparately impacted minority candidates and further impacted Dr. Dennar's ability to build her Med-Peds program with diverse qualified residents.

[15]*Id.* at ¶ 31 (5) [sic].

[16]*Id.* at ¶ 31 (5) and (6).

[17]*Id.* at ¶ 25.

in violation of policy when he recruited two of Dr. Dennar's former interns into the Internal Medicine Residency Program without Dr. Dennar's permission.[18]  Dr. Wiese further threatened to permanently reduce the number of residents in Dr. Dennar's program.[19]  Moreover, in July, 2018, Dr. Dennar was advised that a Resident Evaluation Committee would be convened to review residents' performance and to design/develop program-wide expectations.[20]  This is yet another act which specifically undermined Dr. Dennar's management authority- evaluating residents and developing goals were previously part of Dr. Dennar's responsibilities.[21]  Not only did the Resident Evaluation Committee assume these duties, but Dr. Dennar was not even regularly invited to and therefore excluded from meaningful participation in Committee meetings.  Dr. Dennar's role and responsibility to develop the goals and responsibilities of residents in her clinic was substantially diminished; therefore, her ability to remain accountable for the operation of the program was hampered, in violation of governing policies.[22]  By undermining Dr. Dennar's authority, Tulane, through Dr. Wiese, infringed upon Dr. Dennar's ability to manage her program.  This is damaging to Dr. Dennar as her professional reputation hinges upon her ability to lead a successful medical residency program.

---

[18] *Id.* at ¶ 29.

[19] *Id.* at ¶ 57.

[20] *Id.* at ¶ 58.

[21] *Id.* at ¶ 59.

[22] *Id.* at ¶¶ 60 and 61.

Dr. Dennar was also excluded from certain ACGME processes subsequent to her engagement in protected activity.[23]  Specifically, notwithstanding her request, Tulane has not advised Dr. Dennar regarding ACGME meetings or the results of meetings even though this information is routinely provided to other Program Directors.[24]  Dr. Dennar's name was also omitted from credentialing at Children's Hospital, a new site of training for physicians in her Program.  Importantly, a physician cannot practice at a hospital when they have not been credentialed at that hospital.  As such, Dr. Dennar was excluded from fulfilling her professional obligations.  Notably, the Pediatric Program Director, a white male, who had not engaged in protected activity, like Dr. Dennar, faced no such impediment.

Moreover, Tulane restricted Dr. Dennar's access to tools intended to facilitate the fulfillment of Dr. Dennar's professional duties.  Tulane disabled Dr. Dennar's access to an evaluation tool, Med-Hub, which enables users to review faculty or chief residents.  Similarly, Dr. Dennar's access to duty hour reporting for rotations was removed, so she was unable to confirm that rotations were scheduled in accordance with duty hour restrictions.[25]  On October 20, 2019, Dr. Dennar's Red Wiki access was denied just two days before an Accreditation Council for Graduate Medical Education ("ACGME") institutional site visit.[26]  Red Wiki provides tools which would ordinarily enable Dr. Dennar to perform her duties as Program Director by collaborating with other Program Directors, reviewing

---

[23]*Id.* at ¶ 128.

[24]*Id.* at ¶ 129.

[25]*Id.* at ¶¶ 64-65.

[26]*Id.* at ¶ 122.

institutional citations, and obtaining resources needed to prepare for an ACGME site visit.[27]  Tulane actively subverted and impaired Dr. Dennar's access to these tools which impeded her ability to prepare for a ACGME site visit.[28]

Dr. Dennar's 2018 annual reappointment letter revealed that Tulane increased Dr. Dennar's workload while decreasing her base salary.[29]  This is yet another example of Tulane's retaliatory conduct against Dr. Dennar for her engaging in protected activity.  Specifically, Dr. Dennar's reappointment letter advised of the creation of a new administrative section in her contract and further advised that approximately $30,000 from her base salary would be shifted to fund the administrative office appointment.[30]  Significantly, Dr. Dennar, the only female black Director, was the only Director to have this administrative section added.[31]  Because Dr. Dennar's retirement plan is determined by her base salary, the reduction to her base salary would cause a reduction in Tulane's contribution to her retirement.[32]  Dr. Dennar complained about the obvious impropriety.  Tulane ultimately withdrew these specific actions and did not diminish her salary, as threatened.  Although the adverse employment action in this instance did not manifest itself, Tulane's consistent and ongoing attempts to engage in retaliatory conduct created  an ongoing retaliatory hostile work environment which persisted.

---

[27]*Id.* at ¶ 121.

[28]*Id.* at ¶ 123.

[29]*Id.* at ¶ 106.

[30]*Id.* at ¶ 108.

[31]*Id.* at ¶ 109.

[32]*Id.* at ¶ 110.

On October 20, 2019, due to the numerous acts of retaliation and the ongoing retaliatory hostile work environment, Dr. Dennar further engaged in protected activity when she issued an open letter to Tulane Provost Robin Forman and University President Michael Fitts seeking help to deal with the discrimination.[33]  Therein, Dr. Dennar requested an independent investigator to investigate her complaints of discrimination and ongoing hostile work environment.[34]  Dr. Dennar has continued to experience a perpetual hostile environment, including, but not limited to, a special review of her Med-Peds Program.  The special review of this Program, which is essentially a subset of the larger Internal Medicine Program without any simultaneous scrutiny concerning the larger Internal Medicine Program is inconceivable and a direct product of Tulane's ongoing retaliation against Dr. Dennar for her series of complaints of discrimination, retaliation, and ongoing hostile work environment.  That special review is ongoing.[35]

Dr. Dennar complied with all prerequisites under Title VII and has received a Right to Sue letter.[36]  Thereafter, on October 1, 2020, Dr. Dennar filed the instant suit asserting claims under Title VII, La. Rev. Stat. 23:332, *et seq.*, and the abuse of rights doctrine.  In response, Tulane filed its Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike.[37]  Specifically, Tulane seeks dismissal of Dr. Dennar's abuse of rights claim, Louisiana employment discrimination law claims, and any

---

[33]*Id.* at ¶ 165.

[34]*Id.* at ¶ 166.

[35]*Id.* at ¶¶ 174-176.

[36]*Id.* at ¶ 9.

[37]Rec. Doc. No. 4.

Title VII claims dependent on events that occurred in 2008-2009, which Tulane claims are prescribed.  Moreover, Tulane seeks to strike certain allegations from Dr. Dennar's Complaint.

## II.   LAW & ARGUMENT

Tulane's Motion to Dismiss Dr. Dennar's abuse of rights and those Title VII claims dependent on events occurring in 2008-2009 lack merit and should be denied.  Moreover, because the allegations which Tulane seeks to have stricken from the Complaint are material to Dr. Dennar's claims, the Motion to Strike should also be denied.

### A.   Rule 12(b)(6) Motion to Dismiss Standard

Motions to dismiss are viewed with disfavor and are rarely granted.  *Sanchez v. County of El Paso, Tex.*, 486 Fed. Appx. 455, 456 (5th Cir. 2012). The following standard governs the sufficiency of a complaint:

> [a] complaint will survive a motion to dismiss if its facts, accepted as true, 'state a claim to relief that is plausible on its face.' ... A court's analysis generally should focus exclusively on what appears in the complaint and its proper attachments. ... We make all inferences in a manner favorable to the plaintiff, 'but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.' ...  There is facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' ... Dismissal is improper 'if the allegations support relief on any possible theory.' ... The question at the motion to dismiss stage is whether, 'with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief.' ...

*Wilson v. Birnberg*, 2012 WL 88605, * 1-2 (5th Cir. 2012) (citations omitted).

Further, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment [pursuant to Rule 12(b)(6) that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the fact finder." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 1969 n. 8, 167 L.Ed.2d 929; *Lormand*

*v. US Unwired, Inc.*, 565 F.3d 228, 248 (5th Cir.2009). Applying this standard to Ms. Holden's

Petition for Damages, Defendants' Motion should be denied.

If, however, this Court is inclined to disagree and to require additional allegations to support

Dr. Dennar's claims, Dr. Dennar seeks leave to so amend her pleading in accordance with Rule

15(a)(2) which provides, "a party may amend its pleading . . . with the opposing party's written

consent or the court's leave[, and t]he court should freely give leave when justice so requires."[38]

### 1.       The Louisiana employment discrimination law does not apply to Tulane.

Because Tulane is a non-profit educational institution, Dr. Dennar does not oppose Tulane's

motion to dismiss the claims asserted under the Louisiana Employment Discrimination Law.

### 2.       Dr. Dennar properly stated an abuse of rights claim upon which relief can be granted.

Tulane's motion to dismiss Dr. Dennar's abuse of rights claim is primarily grounded in the

disfavored principle of "form over substance." Specifically, Tulane directs the Court's attention to

¶¶ 189-194 of the Complaint and claims that Dr. Dennar failed to identify factual allegations to

support her abuse of rights claim. (Rec. Doc. No. 4-1, p. 5). That argument is misleading. Dr.

---

[38]The United States Fifth Circuit Court of Appeal has opined that although it is within the discretion of the trial court to determine whether to grant an amendment, "discretion" may be a misleading term, as 15(a) "severely restricts the judge's freedom," directing that leave to amend should be freely given when justice so requires. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597–98 (5th Cir. 1981). Accordingly, Rule 15(a) "evinces a bias in favor of granting leave to amend," demonstrating"the policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." Id. "Absent a strong, declared reason for the denial, a reviewing court will hold the denial of a Rule 15(a) motion to be an abuse of discretion." DeGruy v. Wade, 586 F. App'x 652, 655 (5th Cir. 2014).

Dennar sets forth an abundance of material factual allegations to support her claims in ¶¶ 11-179 of her Complaint.  (Rec. Doc. No. 1).  Paragraph 189 under the "Abuse of Rights" section of the Complaint specifically restates and incorporates the entirety of those factual allegations.  Thereafter, paragraphs 190-194 set forth the legal bases for the abuse of rights claim, the elements thereof, and the allegation that, based upon the facts set forth in the Complaint, Tulane's actions constituted an abuse of rights for which Dr. Dennar is entitled to damages.[39]  Accepting the allegations of fact set forth in Dr. Dennar's Complaint as true, Tulane has:  (1) Required Dr. Dennar to perform the duties of Program Director while limiting her title to Co-Director; (2) Failed to exercise its right to promote Dr. Dennar to the rank of Associate Professor; (3) Repeatedly attempted to subvert and subverted Dr. Dennar's ability to perform her role as the Med-Peds Program Director and the Medicine Director for the Internal Medicine Residency Clinic by threatening to reduce the numbers of residents in her program, developing a Resident Evaluation Committee to perform resident's performance reviews and expectation processes, which were previously duties performed by Dr. Dennar as part of her management of her Program, failed to invite Dr. Dennar to the Resident Evaluation Committee meetings, and failing to advise Dr. Dennar concerning ACGME visits and outcomes; (4) Impeded Dr. Dennar's access to an evaluation tool, Med-Hub, to review faculty or chief residents; (5) Denied Dr. Dennar's access to Red Wiki which ordinarily enabled Dr. Dennar to perform her duties as Program Director by collaborating with other Program Directors and to gain access to resources needed to prepare for ACGME site visits; and (6) Omitted Dr. Dennar's name from credentialing at Children's Hospital.  *Supra*.

---

[39]Rec. Doc. No. 1, ¶¶ 190-194.

As Dr. Dennar's employer, Tulane had the right to confer a title upon Dr. Dennar and to define the duties to be performed by her as an employee. However, if one of the following four conditions are met, a plausible cause of action against Tulane for its abuse of rights exists:

(1) If the predominant motive for it was to cause harm;

(2) If there was no serious or legitimate motive for refusing;

(3) If the exercise of the right to refuse is against moral rules, good faith, or elementary fairness; or

(4) If the right to refuse is exercise for a purpose other than for which it was granted.

Here, Dr. Dennar repeatedly alleged that these actions were taken by Tulane with an ongoing intent to retaliate against her. The predominant motive for all of these actions was to cause Dr. Dennar harm. Moreover, while an employer is generally at liberty to bestow titles and job duties on employees, when the employer deprives an individual continuously in an ongoing pattern and practice of the full emoluments of a position, or recasts the position and the title thereof based on race, these acts are surely against good morals, are not acts of good faith, and by no means comport with elementary fairness. Tulane may want to resist this claim on the merits. However, such a contest has yet to be waged and is premature. Dr. Dennar has stated a claim of abuse of rights upon which relief may be granted.

Tulane further argues that Dr. Dennar's abuse of rights claim is prescribed to the extent that any of the allegations supporting that claim occurred more than a year prior to the October 1, 2020, the date on which Dr. Dennar's Complaint was filed. On the contrary, because Dr. Dennar's factual allegations are continuing in nature, the continuing tort doctrine applies and the one-year liberative prescription period applicable to delictual actions does not bar Dr. Dennar's claim.

> A continuing tort presents another exception to Louisiana's one-year prescriptive period for delicts, because 'when the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated.' As the Louisiana Supreme Court has stated, 'the continuous nature of the alleged conduct has the dual effect of rendering such conduct tortious and of delaying the commencement of prescription.' For a continuing tort to exist, however, there must generally be continuing wrongful conduct, coupled with continuing damage."[40]

Here, continuing damage and continuing conduct exist, as alleged. Tulane's ongoing attempts to infringe upon Dr. Dennar's management, accountability, and supervision of her Program, as compared to other Directors who had unfettered management, accountability, and supervision of their Programs, is ongoing and unabated, as is Tulane's exercise of its right to conduct the "special review" of Dr. Dennar which she claims is an abuse of right intended to cause her harm. That conduct is ongoing and unabated. Dr. Dennar's damage is also ongoing. Dr. Dennar's success, the success of her Program (which reflects directly upon her), and Dr. Dennar's reputation are damaged by Tulane's ongoing abuse of rights. Therefore, Tulane's motion to dismiss Dr. Dennar's abuse of rights claim should be denied.

### 3.     Dr. Dennar timely preserved and properly asserted her Title VII claims.

As alleged, Dr. Dennar timely filed an EEOC charge. That charge included a claim of ongoing retaliation and ongoing hostile work environment. Although a charge of discrimination must be filed with the EEOC within 300 days of the alleged improper action, when the nature of the wrongdoing is ongoing, as long as at least one of the incidents of ongoing conduct occurs within 300 days before filing the EEOC charge, the entirety of the ongoing hostile work environment claim is

---

[40]*Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 323 (5th Cir. 5/10/02).

preserved.  Dr. Dennar's ongoing hostile work environment claim is not time barred because the evaluation of time limitations for hostile work environment claims differ from the time limitation standard applied to claims arising from discrete discriminatory acts.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court drew a distinction between hostile work environment claims and discrete acts.  The Court recognized that discrete acts including "termination, failure to promote, denial of transfer, or refusal to hire" are separate unlawful employment practices that must be filed within the filing period to be actionable. *Id.* at 114.  However, a hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). *Id* at 117. With respect to hostile work environment claims, the Court noted that  "their very nature involves repeated conduct" that occur "over a series of days or perhaps years."  *National Railroad*, 536 U.S. 101 at 115.  As such,

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 117.

Tulane claims the allegations contained in Paragraphs 17-19 are "time-barred by at least a decade."  (Rec. Doc. No. 4-1, p. 7).  Paragraphs 17-19 provide:

17.

When Dr. Dennar originally interviewed for a Directorship at Tulane in 2008, she was informed by Dr. Lee Hamm ("Dr. Hamm"), who was then Chair of the Internal Medicine Department, and now Dean of the Tulane School of Medicine, that Tulane did not "want to change the face of Tulane" and that "I'm afraid that white medical students wouldn't follow or rank favorably a program with a black program director; [however] we'll be comfortable with you sharing a position as co-director with the previous [white male Med-Peds] program director."

18.

Based on those limitations and restrictions for over a full year, Dr. Dennar shared a 50% title but did 100% of the supervisory and program planning work which, based upon Dr. Hamm's inappropriate remarks, was in an effort to mask her leadership of the program.

19.

During that year in which Dr. Dennar assumed full leadership, she steered the Med-Peds Residency Program to full accreditation by the Accreditation Council for Graduate Medical Education ("ACGME") for the first time. Nonetheless, Tulane refused to publicly disclose Dr. Dennar's ascension into this position, to the Accreditation Counsel for Graduate Medical Education ("ACGME") and the National Residency Match Program ("NRMP") until one year later in December 2009 after Dr. Hamm was able to obtain another white male to function as her Assistant Program Director to aid in recruiting white Residents.

The allegations in ¶¶ 17-19 do not give rise to a discrete act, or an actionable separate unlawful employment practice. However, these allegations are material to the ongoing hostile work environment to which Dr. Dennar has been and continues to be subjected. Dr. Dennar properly complained of acts giving rise to the ongoing hostile work environment within the filing period. Therefore, her claim is timely and should not be dismissed.

### B. __Rule 12(f) Standard__

Under Rule 12(f), the Court "may order stricken from any pleading . . . redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Yet,

> (i) It is well-known that 'the action of striking a pleading should be sparingly used by the courts . . . . It is a drastic remedy to be resorted to only when required for the purposes of justice [and] should be granted only when the pleading to be stricken has no possible relation to the controversy.' (citations omitted).  Furthermore, '[a] disputed question of fact cannot be decided on motion to strike.' (citations omitted).  Additionally, 'courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike' absent some 'showing of prejudicial harm to the moving party.' (citations omitted).  When such circumstances are present, the court should 'defer action on the motion and leave the sufficiency of the allegations for determination on the merits.' (citations omitted).  As such, [a]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party.' (citations omitted).

*Stipe v. Tregre*, No. 15-2515, 2015 WL 5012375 at *2 (E.D. La. Aug. 19, 2015) (Lemelle, J.).[41] Notably, a presumption against granting motions to strike exists.  *Id.*

Here, Tulane seeks to strike ¶¶ 17-19 from Dr. Dennar's Complaint.  Contrary to Tulane's argument, the allegations set forth in ¶¶ 17-19 do not give rise to a separate actionable unlawful employment practice.[42]  Instead, the allegations set forth are made part of Dr. Dennar's ongoing hostile work environment claim.  Furthermore, the facts alleged are material to Dr. Dennar's history of employment with Tulane which forms the basis of this Complaint.  Therefore, the allegations are material and pertinent to Dr. Dennar's claims and should not be stricken.

---

[41]This unreported case is attached hereto as Exhibit A.

[42]Rec. Doc. No. 4-1, p. 9.

Tulane further seeks to strike allegations preceding October 1, 2019, which are pleaded in support of Dr. Dennar's abuse of rights claim.[43]  Specifically, Tulane moves the Court to strike ¶¶ 28-104, 116-117, and 134-137, which predate October 1, 2019.  Again, these facts are not only germane to Dr. Dennar's abuse of rights claim, but are also germane to Dr. Dennar's claims of ongoing hostile work environment and retaliatory hostile work environment.  The allegations are material and relevant to the claims asserted.  Even assuming *arguendo* that certain allegations do not form the basis of timely abuse of rights claims, those same allegations certainly have been properly asserted and are material to Dr. Dennar's ongoing claims of hostile work environment.  Therefore, the allegations are materially relevant and should not be stricken- notwithstanding the fact that they shine light upon Tulane's alleged wrongful conduct.

## III.    CONCLUSION

For the foregoing reasons, the 12(b)(6) motion to dismiss abuse of rights and Title VII claims should be denied.  Furthermore, the motion to strike should be denied, in its entirety.

Respectfully submitted,

**LOWE, STEIN, HOFFMAN, ALLWEISS**
  **& HAUVER, L.L.P.**

***/s/ Melanie C. Lockett***
**MICHAEL R. ALLWEISS (#2425)**
**MELANIE C. LOCKETT (#30601)**
**ABIGAIL F. GERRITY (#35777)**
**701 Poydras Street, Suite 3600**
**New Orleans, Louisiana 70139**
**Telephone:    (504) 581-2450**
**Facsimile:     (504) 581-2461**
**Attorneys for Princess Dennar, M.D.**

---

[43]Rec. Doc. No. 4-1, p. 10.

-17-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record to this proceeding accepting service electronically via the CM/ECF or by hand delivery, fax, Federal Express, or U.S. Mail, postage prepaid and properly addressed to those who are not, on this 17th day of November, 2020.

*/s/ Melanie C. Lockett*