UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PRINCESS DENNAR, M.D. | * | CIVIL ACTION |
| | * | |
| | * | NO. 2:20-cv-2679 |
| VERSUS | * | |
| | * | JUDGE GREG G. GUIDRY |
| ADMINISTRATORS OF THE | * | |
| TULANE EDUCATIONAL FUND | * | MAGISTRATE JUDGE KAREN WELLS ROBY |

## SECOND SUPPLEMENTAL AND AMENDED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Princess Dennar, M.D. ("Dr. Dennar"), who supplements and amends her original Complaint filed on October 1, 2020 (Rec. Doc. 1), and the First Supplemental and Amended Complaint filed on December 11, 2020 (Rec. Doc. 13), as set forth herein below:

I.

The entirety of each paragraph, allegation, cause of action, and/or prayer of the original Complaint and the First Supplemental and Amended Complaint filed herein are restated in their entirety and are supplemented and/or amended solely and exclusively by the addition of the paragraphs set forth herein. To the extent any of these additional paragraphs conflict with or alter the content of any previously pled allegation or representation, this amendment replaces any such previously stated allegation or representation.

II.

By adding Paragraph 203 to read as follows:

203.

Dr. Dennar filed an EEOC complaint bearing EEOC Charge No. 461-2021-00959 on March 24, 2021. On April 6, 2021, Right to Sue Letter was received with respect to that complaint and attached as Exhibit "A."

1

III.

By adding Paragraph 204 to read as follows:

204.

To the extent any allegations in the original and subsequent Complaints related to or referenced events set forth in EEOC claim, Charge No. 4461-2021-00959, the Right to Sue Letter related thereto fully authorized and ripened each and all of those allegations, assertions, and claims.

IV

By adding Paragraph 205 to read as follows:

205.

This Second Supplemental and Amended Complaint is filed within 90 days of the April 6, 2021 Right to Sue Letter.

V.

By adding Paragraph 206 to read as follows:

206.

Dr. Wiese chaired the Graduate Medical Education Committee (GMEC), a select committee which was responsible for administering Special Reviews, a process by which programs were internally audited by Tulane. All core program directors, *except for Dr. Dennar who was the only Black female core Program Director,* sat on the GMEC. Tulane previously removed Dr. Dennar from the GMEC around 2013.

VI.

By adding Paragraph 207 to read as follows:

207.

Tulane appointed Dr. Paul Gladden to serve as the Assistant DIO specifically for the Meds-Peds resident program. The appointment was purportedly made to resolve a conflict of interest identified by the ACGME site visit as a result of Dr. Wiese's dual position as DIO and Internal Medicine Program Director. Dr. Wiese's dual positions contributed to the discriminatory and retaliatory conduct experienced by Dr. Dennar as he was both her supervisor and her harasser.

2

VII.

By adding Paragraph 208 to read as follows:

208.

Dr. Gladden's appointment was merely for "optics" as Dr. Gladden was a Black orthopedic surgeon who also served on the GMEC. Dr. Gladden admitted he had no understanding from a clinical level of the Meds-Peds program and did not actually function as the DIO to Meds-Peds. Tulane did not appoint Dr. Gladden to serve as the Assistant DIO for the Internal Medicine residency program and Dr. Wiese continued to hold the dual positions for significant length of time even after Tulane was cited by the ACGME for these dual positions.

VIII.

By adding Paragraph 209 to read as follows:

209.

In June, 2020, the Special Review audit of the Meds-Peds program was underway by the GMEC. The Special Review of Meds-Peds was discriminatory and retaliatory because the review based on ACGME citation sparked by complaints of discrimination by Plaintiff as the Meds-Peds Program Director and Meds-Peds residents. Both Dr. Dennar and Meds-Peds residents reported being victims of discrimination by individuals outside the program yet the GMEC decided instead to audit the victim, not the individuals and discriminatory systems which were the subject of the complaints.

IX.

By adding Paragraph 210 to read as follows:

210.

The Special Review policy provided that the Associate Dean of GME (DIO) or his/her designee would chair the Special Review process and in the event of a potential conflict of interest, the Assistant Dean of GME would chair the Special Review process. However, Dr. Gladden, the Assistant Dean of GME, did not Chair the Special Review process for the Med-Peds Program as policy would dictate. Although Dr. Gladden was allegedly appointed to resolve the conflict with Dr. Wiese's dual positions, Tulane allowed Dr. Wiese to select a white individual to chair the audit of the Meds-Peds Program.

X.

By adding Paragraph 211 to read as follows:

211.

The Special Review Committee's audit of the Meds-Peds program further deviated from normal procedures. For example, the review included mandating individual and isolated interviews with residents even though some of the residents had already been interviewed as a group. The internal review was pretextual, discriminatory, and contained inaccurate and prejudicial information. Dr. Wiese, Dr. Dennar's harasser, was the Chair of GMEC, selected the Special Review Committee, and oversaw all the individuals who participated in the committee and the audit. As a result, the predominant motive for the Special Review was to cause harm to Dr. Dennar and was instigated against moral rules, good faith and elementary fairness.

XI.

By adding Paragraph 212 to read as follows:

On January 25, 2020, one of the Med-Peds PGY-3 residents, Nathaniel Glasser, called Dr. Dennar to express that he was distraught that he did not win the nomination of Chief Resident for the following academic year. Dr. Glasser disclosed to Dr. Dennar that Dr. Gladden asked him to say something negative about Dr. Dennar and the Meds-Peds program during the preparation for the ACGME site visit, but Dr. Glasser declined.  Dr. Gladden previously informed Dr. Dennar that he wanted Dr. Glasser to attend the ACGME site visit instead of the two Black female Med-Peds Chief residents because Dr. Glasser "looked" like a good representation for the Med-Peds program. Dr. Glasser is a white male. During the ACGME site visit, the institution received twelve citations. Seven of the twelve citations were a result of Dr. Dennar and the other Med-Peds residents' complaints about discrimination.
.

XII.

By adding Paragraph 213 to read as follows:

213.

In November, 2020, during the mandatory monthly meeting, the Tulane Pediatric Chair, Dr. Samir El-Dahr attempted to coerce Dr. Dennar to select a white male as the Associate Program Director instead of the two women of color that Dr. Dennar had chosen as Associate Program Directors. The two women of color selected were logical choices because of their qualifications and familiarity with the Meds-Peds program and requirements. Dr. El-Dahr coercion was an attempt to usurp Dr. Dennar's authority as program director and further exacerbated the discriminatory environment.

4

XIII.

By adding Paragraph 214 to read as follows:

214.

In December, 2020, Dr. Dennar was a witness deposed in a suit by a resident against Tulane for discrimination.  The following month, in January, 2021, the Special Review Committee signed off on an internal review report which contained numerous inaccuracies and recommended that Dr. Dennar be removed as Program Director. Dr. Dennar was not given an opportunity to review the report prior to submission to the GMEC which was contrary to customary process done for previous programs directors who had undergone special review audits and was in direct conflict with Tulane's public statement to the media. Tulane publically misrepresented that Dr. Dennar reviewed the report before the decision was made to remove her from her position as Program Director of Meds-Peds. These actions were discriminatory and retaliatory in nature.

XIV.

By adding Paragraph 215 to read as follows:

215.

On February 8, 2021, Dr. Dennar sent an email to the Chairs of Internal Medicine and Pediatrics reporting continuous acts of intimidation and discrimination and requested a discussion on racism to be added to the mandatory monthly Chair meetings she was required to attend.  The Chair of Pediatrics, Dr. Samir El-Dahr stated that he was tired of talking about racism because it gave him a headache. Despite various attempts to report the ongoing discrimination, the Tulane Chairs did nothing to remedy the situation.

XV.

By adding Paragraph 216 to read as follows:

216.

On February 10, 2021, Dean Hamm emailed Dr. Dennar requesting a meeting to discuss the Special Review Committee's recommendations. Dr. Dennar requested a copy of the Special Review Committee's report but was not sent the report until the following day after they met.

XVI.

By adding Paragraph 217 to read as follows:

217.

The following day, on February 11, 2021, Dr. Dennar met with Dean Hamm, Dr. Paul Gladden, and Rhonda Coignet and was informed by Dean Hamm that she was removed from her teaching duties and as Program Director of the Meds-Peds program. There was no criticism regarding Dr. Dennar's performance as a teacher, researcher, or physician.

XVII.

By adding Paragraph 218 to read as follows

218.

Dr. Jessica Debord, a white individual, was pre-selected by Tulane as the Interim Program Director before Dr. Hamm's meeting with Dr Dennar despite the fact that there were two women of color Associate Program Directors who were the next logical choice given their position in the Meds-Peds residency program. Upon information and belief, these women had better qualifications than Dr. DeBord as they were extensively involved with the Meds-Peds program. Dr. DeBord then removed Dr. Dennar as core faculty in the ACGME faculty survey, which prevented Dr. Dennar from further communicating directly with the ACGME.

XVIII.

By adding Paragraph 219 to read as follows:

219.

Dean Hamm issued a public statement to the media that the decision to remove Dr. Dennar was based on the "recommendations" of the Special Review Committee. Tulane and Dean Hamm published a statement to the press falsely indicating that Dr. Dennar had an opportunity to review and respond to the Special Review Committee's "recommendations" which was untrue. Dr. Dennar was sent a copy of the report after she was removed as program director and could not respond prior to her removal.

XIX.

By adding Paragraph 220 to read as follows:

Tulane's audit and reliance on the "recommendations" of the Special Review to remove Dr. Dennar from her duties and as program director were baseless and pretextual because the citation of the Meds-Peds program by the ACGME, had been resolved. The Meds-Peds program was no longer in warning status when Dr. Dennar was removed. Both Meds-Peds and Internal Medicine became accredited without warning yet of the two programs only Meds-Peds was audited.

XX.

By adding Paragraph 221 to read as follows:

221.

Dr. Dennar sent three open letters in February and March of 2021 to the President of Tulane, Michael Fitts regarding the discrimination at Tulane and the retaliatory actions of Dean Hamm and Dr. Wiese. President Michael Fitts did not respond to Dr. Dennar nor did he open an investigation in response to the complaints of discrimination and retaliation.

XXI.

By adding Paragraph 222 to read as follows:

222.

Tulane and Dean Hamm published a statement to the press falsely indicating that Dr. Dennar could "appeal" her removal. There was no "appeal" of the removal set forth in Tulane's policies and procedures and Dr. Dennar was never informed that she had the option to appeal. Tulane has taken a false and pretextual position that Dr. Dennar's suspension and removal as Program Director was not a "decision" but a "recommendation." The absurdity of Tulane's position is evident by the fact that Dr. Dennar was removed from her position. If the decision had been solely a "recommendation", the removal would not have resulted. These statements were untrue, made in bad faith, and were part of a public campaign to manipulate public sentiment.

XXII.

By adding Paragraph 223 to read as follows:

223.

On March 1, 2021, Dean Hamm offered to reinstate Dr. Dennar back to the program director position subject to various conditions, none of which remedied the race and gender discrimination concerns reported by Dr. Dennar.

Dean Hamm set forth the conditions as follows:

*After careful consideration, I am offering to restore you as program director, assuming your agreement with the following items, which are designed to address the issues raised in the special review report.*

*• Administrative Support: As with all programs, it is vitally important that school, ACGME and other relevant requirements are timely met. To that end, and due to the complexity of this inter-disciplinary program, we will arrange for additional support staff to help you meet all*

7

*compliance and other reporting requirements.*

*• Program Oversight: Dr. Paul Gladden serves as the DIO for the Med-Peds program. As such, he will be a continuing advisor for your program, your residents, and you. In addition, the chairs of the department of Pediatrics and Internal Medicine will continue to serve as resources for your program.*

*• Executive Coaching: As the School does periodically in the case of other leaders, we will provide executive coaching which will mentor you in your role today and help prepare you for future leadership positions.*

The issues reviewed by the GMEC were biased against Dr. Dennar and the additional conditions did nothing to remedy the complaints made by the Meds-Peds program. Not only was Dr. Dennar required to abide by the terms of her employment contract but Dean Hamm required further layers of bureaucracy and staff that failed to address the actual problems of discrimination. Executive coaching was not going to stop Dr. Wiese from harassing Dr. Dennar. Tulane deceptively took the position that Dr. Dennar and Meds-Peds residents were the problem and not the victim of discrimination.

XXIII.

By adding Paragraph 224 to read as follows:

224.

**VIOLATION OF SECTION 42 U.S.C. 1981 EQUAL RIGHTS UNDER THE LAW**

Dr. Dennar incorporates by reference each and every allegation of Paragraph 1-223 of the Complaint, the First Supplemental and Amended Complaint and this Second Supplemental and Amended Complaint.

XXIV.

By adding Paragraph 225 to read as follows:

225.

Dr. Dennar is Black female who was not given the full and equal benefit enjoyed by whites during her employment at Tulane as set forth in 42 U.S.C. §1981. Through the actions of its employees, Dr. Wiese, and Dean Hamm, Tulane had intent to discriminate based on race and the discrimination concerned the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship with Tulane.

XXV.

By adding Paragraph 226 to read as follows:

226.

Dr. Dennar had a contractual employment relationship with Tulane and was reappointed annually. Dean Hamm signed each "reappointment" letter designating Dr. Dennar as an Assistant Professor, Program Director for Meds-Peds, and the Medical Director of the Ambulatory Care Services. Dr. Dennar's base salary was paid through her various appointments and she received a supplemental salary for her clinical work with patients.

XXVI.

By adding Paragraph 227 to read as follows:

227.

Tulane's intention to discriminate because of Dr. Dennar's race existed as early as 2008 as set forth in the Complaint. Dr. Dennar was forced to do all of the work and share only half of the title of Program Director because Tulane did not "want to change the face of Tulane" meaning that Tulane did not want a Black Program Director and Dr. Dennar was forced to share the title with a White male for over a year.

XXVII.

By adding Paragraph 228 to read as follows:

228.

In 2018, Tulane offered a discriminatory employment contract by sending a reappointment letter reducing Dr. Dennar's base salary by 25%. The reduction would be the lowest base guaranteed salary Dr. Dennar ever received since she started at Tulane. The 25% equaled $30,448 of the base salary and was categorized as an "administrative appointment" which under the terms, could be taken away or lowered at any time for any reason despite the one year term of the contract. Upon information and belief, none of the other program directors received the new "administrative appointment" term. Although Dr. Dennar ultimately raised these issues with Tulane and renegotiated the contract, these actions are proof of Tulane's intent to discriminate against Dr. Dennar with respect to the making of a contract.

XXVIII.

By adding Paragraph 229 to read as follows:

229.

Tulane annually appointed Dr. Dennar as Assistant Professor which included duties of teaching, research, and clinical responsibilities at University Medical Center and Tulane University Hospital and Clinic. Dr. Dennar was also appointed as Program Director of the Meds-Peds program and was charged with overseeing the residency program to ensure quality training program that meets accreditation standards.

XXIX.

By adding Paragraph 230 to read as follows:

230.

Dr. Wiese and others intentionally discriminated against Dr. Dennar because of her race and affected the performance, terms, and conditions of Dr. Dennar's contract with Tulane and Program Director. Dr. Wiese and others usurped Dr. Dennar's authority, tampered with Dr. Dennar's ability to ensure that her residents met accreditation standards by preventing Black residents from completing necessary requirements. Dr. Wiese permitted residents to be transferred out of her program without Dr. Dennar's prior knowledge and made unilateral decisions about the Meds-Peds program that were responsibilities delegated to Dr. Dennar.  Dr. Wiese did not usurp the authority of other program directors and treated Dr. Dennar intentionally different because she was a Black female.

XXX.

By adding Paragraph 231 to read as follows:

231.

As a condition of her employment, Dr. Dennar was required to use the ATLAS system which ranked Historically Black Colleges and Universities ("HBCU") with the lowest scores. Even though Tulane was unranked nationally, it subjectively ranked itself higher than all HBCU's and at the same level as Georgetown University. Dr. Dennar, a Black female, was forced to use a discriminatory tool that scores applicants from HBCUs lower than Whites who predominantly attend other medical schools and interfered with the conditions and performance of her employment by limiting her pool of diverse qualified candidates.

XXXI.

By adding Paragraph 232 to read as follows:

232.

But for Dr. Dennar's race, she would not have been intentionally discriminated against by Dr. Wiese, Dean Hamm and other agents of Tulane and removed as Program Director and from her teaching

duties as resident supervisor. None of the other program directors had their authority as directors usurped by Dr. Wiese and others. Dr. Dennar's position as Program Director and faculty teaching duties should have been granted the full power, benefits, privileges, and authority to administer the program as agreed upon in the terms of her appointment and employment.

XXXII.

By adding Paragraph 233 to read as follows:

233.

Dr. Dennar was subjected to a hostile work environment that was severe and/or pervasive because of her race as described in the Complaint and First Amended and Supplemental Complaint. Further, Dr. Dennar was required to discriminate against applicants from HBCUs who are predominantly Black as a condition of employment. Dr. Dennar was denied advancement opportunities including a promotion to Associate Professor and was prevented from being able to perform her job because of her race. Dr. Dennar was denied the enjoyment of the privileges and benefits of her employment agreement, including the Tuition Exchange Policy benefit for her four children and the Tuition Waiver Policy for Dr. Dennar's intended goal of a Masters Degree because of the racial discrimination and hostile work environment. Further, Dr. Dennar was treated differently than White program directors who were allowed full power and authority to administer their programs without the discriminatory interference of the DIO who supervised the programs, Dr. Wiese.

XXXIII.

By adding Paragraph 234 to read as follows:

234.

**VIOLATION OF TITLE VII, 42 USC §2000e AND 42 USC 1981 FOR  RETALIATION**

Dr. Dennar incorporates by reference each and every allegation of Paragraph 1-223 of the Complaint, the First Supplemental and Amended Complaint and this Second Supplemental and Amended Complaint.

XXXIV

By adding Paragraph 235 to read as follows:

235.

During her employment Dr. Dennar opposed the racial and gender discriminatory practices including reporting the discrimination to individuals, agencies, filing various EEOC charges, and testifying in depositions as set forth in previous allegations.

11

XXXV

By adding Paragraph 236 to read as follows:

236.

Dr. Dennar was retaliated against as set forth in the Complaint and First Amended and Supplemental Complaint. For example, Dr. Dennar's program became the subject of the Special Review process, Tulane attempted to reduce Dr. Dennar's base salary, and Tulane increased Dr. Dennar's workload. Dr. Dennar was omitted from credentialing from Children's Hospital and had various other acts taken against her in retaliation of her protected activity as described in detail in the prior allegations.

XXXVI.

By adding Paragraph 237 to read as follows:

237.

Dr. Dennar filed this lawsuit in October, 2020. A few months later she was removed from both her teaching duties and as Program Director of the Meds-Peds program for discriminatory motives under the guise of a false pretext. Dr. Dennar is still employed at Tulane as Medical Director but all other appointments were removed. Dr. Dennar's job duties were made objectively harder than White program directors due to Dr. Wiese's discriminatory interference. Dr. Dennar is now prevented from practicing in academia due to her removal. All of these actions constitute adverse employment actions as a result of retaliation.

XXXVII.

By adding Paragraph 238 to read as follows:

238.

Dean Hamm removed Dr. Dennar from her teaching duties in the clinical setting supervising residents while seeing patients. Yet Tulane continues to send negative performance reviews or Relative Value Units "RVU" of work performed based on the number of patients seen and billed which would inevitably be in the "red" because she is no longer allowed to see patients. Upon information and belief, this information would be kept in Dr. Dennar's employment file and is adverse information indicating she was a low performer and could not meet the expectations of her employment which was not true.

XXXVIII.

12

The purpose of this Second Supplemental and Amended Complaint is twofold. First, the Plaintiff wishes to bring to the Court and the parties' attention the issuance of a third Right to Sue Letter which, to the extent any allegations were to be argued as not having ripened due to the absence of a Right to Sue Letter or to otherwise not be properly before the Court in the absence of a Right to Sue Letter, the Right to Sue Letter in Charge No. 461-2021-00959, attached hereto as Exhibit "A," makes all allegations in the original Complaint, First Supplemental and Amended Complaint, and this Second Supplemental and Amended Complaint, as incorporated herein, ripe and appropriate for consideration by this Court.

Second, the Plaintiff has added a theory of recovery for violation of 42 U.S.C. §1981 for the facts asserted in the Complaint, First Supplemental and Amended Complaint, and this Second Supplemental and Amended Complaint. Plaintiff has also added a claim for Retaliation under the previously pled Title VII action and the added Section 1981 as Dr. Dennar has been the subject of retaliation and was recently removed from her teaching duties and as Program Director for the Meds-Peds program.

WHEREFORE, Plaintiff, Dr. Princess Dennar, prays that this Second Supplemental and Amended Complaint be served and that after Defendant answers and all proceedings are had herein, there be judgment in favor of plaintiff, Princess Dennar, and against defendant, The Administrators of the Tulane Educational Fund, such that plaintiff receives an award of the following, to be determined at trial or as otherwise appropriate:

a.    An award of back pay, front pay, punitive damages, emotional distress based damages, lost benefits, reinstatement to her position, and other damages Dr. Dennar suffered to be determined at trial under Title VII , Section 1981, and as a result of the abuse of rights;

b.    An award of prejudgment and post-judgment interest;

c.      An award of costs and expenses of this action together with reasonable attorney's

fees and expert fees; and

d.      Such other relief as this Court deems just and proper.

Dated: May 17, 2021

/s/ **MICHAEL R. ALLWEISS_____**
LOWE, STEIN, HOFFMAN, ALLWEISS
& HAUVER, L.L.P.
MICHAEL R. ALLWEISS (#2425)
MELANIE C. LOCKETT (#30601)
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: (504) 581-2450
Facsimile: (504) 581-2461
Attorneys for Princess Dennar, M.D.

-and-

/s/ **JESSICA VASQUEZ**
JESSICA VASQUEZ (#27124)
VASQUEZ LAW OFFICE
400 Poydras Street, Suite 900
New Orleans, Louisiana 70130
Telephone: (504) 571-9582
Facsimile: (504) 684-1449
jvasquez@vasquezlawoffice.com
Attorneys for Princess Dennar, M.D.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record to this proceeding accepting service electronically via the CMIECF or by hand delivery, fax, Federal Express, email, or U.S. Mail, postage prepaid and properly addressed to those who are not, on this __17__ day of May, 2021.

/s/__JESSICA VASQUEZ_____
JESSICA VASQUEZ

15