## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PRINCESS DENNAR, M.D.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 2:20-cv-2679** |
| **THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND** | * | **JUDGE GREG GERARD GUIDRY** |
| | * | **MAGISTRATE JUDGE KAREN WELLS ROBY** |

## OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS AND RULE 12(f) MOTION TO STRIKE

**MAY IT PLEASE THE COURT:**

Plaintiff, Princess Dennar, M.D. ("Dr. Dennar"), through undersigned counsel, respectfully submits this Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike. (Rec. Doc. No. 43).

## I.     BACKGROUND

Dr. Dennar is the first and only black female residency Program Director in the Tulane School of Medicine.[1] Dr. Dennar began her employment with Tulane in January, 2008, as an Assistant Professor and Medical Director of Internal Medicine Residency Ambulatory

---

[1] Rec. Doc. No. 1, ¶ 3.

Services.[2]  In 2009, Dr. Dennar assumed the role of the Co-Program Director of the Medicine Pediatrics Residency Program ("Med-Peds").[3] Over twelve years later, Dr. Dennar remained an Assistant Professor.[4] She served as Program Director of Med-Peds until her removal in 2021 by Tulane.[5] Dr. Dennar remains as the Medical Director of Tulane Primary Care Clinic at University Medical Center.[6] Throughout her employment with Tulane, Dr. Dennar has been subjected to continuous acts of gender and race based discrimination and an ongoing and retaliatory hostile work environment. Tulane's ongoing unlawful conduct has adversely impacted her employment, program, position, duties, responsibilities, authority, assignments, service, pay, and ability to independently run and recruit residents into the program.[7]

Tulane has subjected Dr. Dennar to adverse employment actions, including its failure to timely promote Dr. Dennar from Assistant Professor to the rank of Associate Professor as well as her recent removal from her position as Program Director of the Meds-Peds residency program, a position she occupied for over 12 years.[8] Tulane has further subjected Dr. Dennar to an ongoing race based and retaliatory hostile work environment. The ongoing hostile work environment commenced early on, in 2008, when Dr. Dennar originally interviewed for a

---

[2]  *Id.* at ¶ 1
[3] *Id.* at ¶ 1
[4] *Id.* at ¶
[5] Rec. Doc. 39 ¶217
[6] *Id.* 11.
[7] *Id.*, at ¶ 14.
[8] *Id.* at ¶ 16.

directorship at Tulane.  Dr. Dennar was advised by then Chair of the Internal Medicine Department, and now Dean of the Tulane School of Medicine, Lee Hamm, that Tulane did not "want to change the face of Tulane" and that "I'm afraid that white medical students wouldn't follow or rank favorably a program with a black program director; [however] we will be comfortable with you sharing a position as co-director with the previous [white male med-peds] program director."[9]   Based on this reasoning, Dr. Dennar was required to share a 50% title as Co-Director, when in fact Dr. Dennar did 100% of the supervisory and program planning work. The shared directorship role was created for the sole purpose of masking Dr. Dennar's leadership of the Program.[10]

Dr. Dennar performed the work of a Program Director, but because she was a black female, Tulane initially declined to give her the title of Program Director. Approximately one year later, Dr. Dennar finally assumed the role as the sole Director of the Med-Peds Residency Program. However, the management and supervision of the Med-Peds Program was shifted to the Internal Medicine Program Director.[11] This blatant subversion of Dr. Dennar's authority as Program Director continued during her appointment as Program Director. Dr. Dennar has been subjected to and continues to be subjected to a race based hostile work environment.

Dr. Dennar has also been the victim of retaliation and ongoing retaliatory hostile work

---

[9] *Id.* at ¶ 17.
[10] *Id.* at ¶ 18.
[11] *Id.* at ¶ 20.

environment. On June 16, 2017, Dr. Dennar engaged in protected activity when she served as a witness in support of her then Program Coordinator's race based claims of discrimination against a Tulane Program Manager.[12] Tulane's discriminatory practices continued and were wide spread. In April of 2018, seven black female Med-Peds residents asserted claims of discrimination against Dr. Wiese with Tulane's Office of Institutional Equity ("OIE").[13]

Notably, the adverse effects of discrimination on these students could potentially affect their performance outcomes which would have reflected upon Dr. Dennar as Program Director. Dr. Dennar herself filed a similar but separate complaint arising out of the race and gender based discrimination perpetuated by Tulane through Dr. Wiese.[14] Dr. Dennar's complaint concerned: Disparate treatment of her minority residents in the Med-Peds Program;[15] Tulane's ongoing insistence upon subverting Dr. Dennar's authority to perform her responsibilities as the Med-Peds Program Director;[16] Tulane's discriminatory practice in identifying potential residents using the ATLAS tool which is structured to adversely impact graduates from traditionally black accredited medical colleges;[17] Tulane's repeated efforts to undermine Dr. Dennar's leadership

---

[12] *Id.* at ¶23.

[13] *Id.* at ¶¶ 28-30

[14] *Id.* at ¶¶ 30-31.

[15] *Id.* at ¶ 31 (1-3).

[16] *Id.* at ¶ 31 (4).

[17] *Id.* at ¶ 31 (4). Specifically, because the traditionally black accredited medical colleges were at the "bottom of the list" in ATLAS, the use of ATLAS placed minority residency candidates graduating from black accredited medical schools at a disadvantage thereby depriving them of an equal opportunity to match residency at Tulane. Tulane's use of ATLAS disparately

and authority by depriving her of her position as the Medical Director of the Internal Medicine Residency Ambulatory Clinic;[18] and Tulane's retaliation against Dr. Dennar for engaging in the protected activity of complaining about the discriminatory effects in the application of the ATLAS tool which adversely and disproportionately affects minority residency candidates.[19]

After engaging in protected activity, Dr. Dennar became the target of retaliation and continued to be subjected to an ongoing hostile work environment.[20] In February, 2018, Dr. Wiese, Director of the Internal Medicine Residency Program, continued to subvert Dr. Dennar's authority in violation of policy when he recruited two of Dr. Dennar's former interns into the Internal Medicine Residency Program without Dr. Dennar's permission.[21]

Dr. Wiese further threatened to permanently reduce the number of residents in Dr. Dennar's program.[22] Moreover, in July, 2018, Dr. Dennar was advised that a Resident Evaluation Committee would be convened to review residents' performance and to design/develop program-wide expectations.[23] This is yet another act which specifically undermined Dr. Dennar's management authority- evaluating residents and developing goals

---

impacted minority candidates and further impacted Dr. Dennar's ability to build her Med-Peds program with diverse qualified residents.

[18] *Id.* at ¶ 31 (5) [sic].

[19] *Id.* at ¶ 31 (5) and (6).

[20] *Id.* at ¶ 25

[21] *Id.* at ¶ 29.

[22] *Id.* at ¶ 57.

[23] *Id.* at ¶ 58.

were previously part of Dr. Dennar's responsibilities.[24]  Not only did the Resident Evaluation Committee assume these duties, but Dr. Dennar was not even regularly invited to and therefore excluded from meaningful participation in Committee meetings. Dr. Dennar's role and responsibility to develop the goals and responsibilities of residents in her clinic was substantially diminished; therefore, her ability to remain accountable for the operation of the program was hampered, in violation of governing policies.[25]  By undermining Dr. Dennar's authority, Tulane, through Dr. Wiese, infringed upon Dr. Dennar's ability to manage her program. This is damaging to Dr. Dennar as her professional reputation hinges upon her ability to lead a successful medical residency program.

Dr. Dennar was also excluded from certain ACGME processes subsequent to her engagement in protected activity.[26] Specifically, notwithstanding her request, Tulane did not advise Dr. Dennar regarding ACGME meetings or the results of meetings even though this information is routinely provided to other Program Directors.[27]   Dr. Dennar's name was also omitted from credentialing at Children's Hospital, a new site of training for physicians in her Program. Importantly, a physician cannot practice at a hospital when they have not been credentialed at that hospital.  As such, Dr. Dennar was excluded from fulfilling her professional obligations. Notably, the Pediatric Program Director, a white male, who had not engaged in

---

[24] *Id.* at ¶ 59.
[25] *Id.* at ¶¶ 60 and 61.
[26] *Id.* at ¶ 128
[27] *Id.* at ¶ 129

protected activity, like Dr. Dennar, faced no such impediment.

Moreover, Tulane restricted Dr. Dennar's access to tools intended to facilitate the fulfillment of Dr. Dennar's professional duties. Tulane disabled Dr. Dennar's access to an evaluation tool, Med- Hub, which enables users to review faculty or chief residents. Similarly, Dr. Dennar's access to duty hour reporting for rotations was removed, so she was unable to confirm that rotations were scheduled in accordance with duty hour restrictions.[28] On October 20, 2019, Dr. Dennar's Red Wiki access was denied just two days before an Accreditation Council for Graduate Medical Education ("ACGME") institutional site visit.[29] Red Wiki provides tools which would ordinarily enable Dr. Dennar to perform her duties as Program Director by collaborating with other Program Directors, reviewing institutional citations, and obtaining resources needed to prepare for an ACGME site visit.[30] Tulane actively subverted and impaired Dr. Dennar's access to these tools which impeded her ability to prepare for a ACGME site visit.[31]

Dr. Dennar's 2018 annual reappointment letter revealed that Tulane increased Dr. Dennar's workload while decreasing her base salary.[32]   This was yet another example of Tulane's retaliatory conduct against Dr. Dennar for her engaging in protected activity. Specifically, Dr. Dennar's reappointment letter advised of the creation of a new administrative

---

[28] *Id.* at ¶¶ 64-65
[29] *Id.* at ¶ 122
[30] *Id.* at ¶ 121.
[31] *Id.* at ¶ 123
[32] Rec. Doc. 39 ¶227

section in her contract and further advised that approximately $30,000 from her base salary would be shifted to fund the administrative office appointment.[33]

Significantly, Dr. Dennar, the only female black Director, was the only Director to have this administrative section added.[34] Because Dr. Dennar's retirement plan is determined by her base salary, the reduction to her base salary would have caused a reduction in Tulane's contribution to her retirement.[32] Dr. Dennar complained about the obvious impropriety. Tulane ultimately withdrew these specific actions and did not diminish her salary, as threatened. Although the adverse employment action in this instance did not manifest itself, Tulane's consistent and ongoing attempts to engage in retaliatory conduct created an ongoing retaliatory hostile work environment which persisted.

On October 20, 2019, due to the numerous acts of retaliation and the ongoing retaliatory hostile work environment, Dr. Dennar further engaged in protected activity when she issued an open letter to Tulane Provost Robin Forman and University President Michael Fitts seeking help to deal with the discrimination.[35] Therein, Dr. Dennar requested an independent investigator to investigate her complaints of discrimination and ongoing hostile work environment.[36] Dr. Dennar has continued to experience a perpetual hostile environment, including, but not limited to, a special review of her Med-Peds Program. The special review of this Program, which is

---

[33] *Id.*
[34] *Id.*
[35] *Id.* at ¶ 165.
[36] *Id.* at ¶ 166.

essentially a subset of the larger Internal Medicine Program, without any simultaneous scrutiny concerning the larger Internal Medicine Program is inconceivable and a direct product of Tulane's ongoing retaliation against Dr. Dennar for her series of complaints of discrimination, retaliation, and ongoing hostile work environment.[37]

On February 11, 2021, Dr. Dennar was removed as Program Director of the Meds-Peds program by Dean Hamm.[38] Dean Hamm publically stated that Dr. Dennar had been provided with the findings of the Special Review and had an opportunity to respond to the findings-which was false.[39] On March 1, 2021, Dean Hamm offered to reinstate Dr. Dennar with various conditions none of which remedied the race and gender discrimination complaints.[40]

Dr. Dennar complied with all prerequisites under Title VII and received the first Right to Sue Notice.[41] On October 1, 2020, Dr. Dennar filed the instant suit asserting claims under Title VII, La. Rev. Stat. 23:332, *et seq.*, and the abuse of rights doctrine. In response, Tulane filed its Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike.[42] Dr. Dennar opposed that motion.[43] Dr. Dennar filed a Supplemental and Amended Complaint specifically adopting and incorporating the allegations set forth in her original Complaint and further alleging receipt of

---

[37] *Id.* at ¶¶ 174-176.
[38] Rec. Doc. 39 ¶217
[39] Rec. Doc. 39 ¶219
[40] Rec. Doc. 39 ¶222
[41] *Id.* at ¶ 9.  See also *Supplemental and Amended Complaint* (Rec. Doc. No. 15 at  ¶¶ 197-202).
[42] Rec. Doc. No. 4.
[43] Rec. Doc. No. 9.

her second Right to Sue Notice.[44]  Tulane then re-filed its motion pursuant to the Court's Order.[45]

Dr. Dennar filed an opposition to the motions and then filed a Second Supplemental and Amended Complaint adding additional facts since Dr. Dennar was recently removed as Program Director of the Meds-Peds program on February 11, 2021.[46] The basis of the firing resulted in an additional EEOC charge for which a third Right to Sue Notice was issued and a claim under Section 1981 was added.[47]

Tulane seeks dismissal of Dr. Dennar's abuse of rights claim, Louisiana employment discrimination law claims, any Title VII claims dependent on events that occurred in 2008-2009, which Tulane claims are prescribed, and all Section 1981 claims. Moreover, Tulane seeks to strike certain allegations from Dr. Dennar's Complaint related to comments made by the Dean to Dr. Dennar and the use of the discriminatory program, ATLAS based on prescription and alleged impertinence.

## II.   LAW & ARGUMENT

Tulane's Motion to Dismiss seeks dismissal of Dr. Dennar's abuse of rights, Title VII claims and Section 1981 claims based allegations made during the 2008-2009 timeframe. The

---

[44] *Supplemental and Amended Complaint* (Rec. Doc. No. 15).
[45]  Rec. Doc. No. 14.  See also (Rec. Doc. No. 17-1, p. 1.)
[46] *Opposition to Motion to Dismiss and Motion to Strike* (Rec. Doc. 18)*; Second Amended and Supplemental Complaint* (Rec. Doc. 39)*.
[47] Rec. Doc. 39 ¶ 203

motion lacks merit and should be denied because the allegations all relate to discriminatory motive and/or are part of a continuous tort. Moreover, because the allegations which Tulane seeks to have stricken from the Complaint are material to Dr. Dennar's claims, the Motion to Strike should also be denied.

### A.   Rule 12(b)(6) Motion to Dismiss Standard

Motions to dismiss are viewed with disfavor and are rarely granted. *Sanchez v. County of El Paso, Tex.*, 486 Fed. Appx. 455, 456 (5th Cir. 2012). The following standard governs the sufficiency of a complaint:

> [a] complaint will survive a motion to dismiss if its facts, accepted as true, 'state a claim to relief that is plausible on its face.' ... A court's analysis generally should focus exclusively on what appears in the complaint and its proper attachments. ... We make all inferences in a manner favorable to the plaintiff, 'but plaintiffs must allege facts that
> support the elements of the cause of action in order to make out a valid claim.' ... There is facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' ... Dismissal is improper 'if the allegations support relief on any possible theory.'
> ... The question at the motion to dismiss stage is whether, 'with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief.' ...

*Wilson v. Birnberg*, 2012 WL 88605, * 1-2 (5th Cir. 2012) (citations omitted).

Further, "when a complaint adequately states a claim, it may not be dismissed based on a

district court's assessment [pursuant to Rule 12(b)(6)] that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the fact finder." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 1969 n. 8, 167 L.Ed.2d 929; *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 248 (5th Cir.2009).  Applying this standard to Dr. Dennar's complaints Defendants' Motion should be denied.

If, however, this Court is inclined to disagree and to require additional allegations to support Dr. Dennar's claims, Dr. Dennar seeks leave to amend her pleading in accordance with Rule 15(a)(2) which provides, "a party may amend its pleading . . . with the opposing party's written consent or the court's leave,[and t]he court should freely give leave when justice so requires."[48]

1. **Louisiana Employment Discrimination Law does not apply to Tulane.**

As stated in Plaintiff's prior opposition, because Tulane is a non-profit educational institution, Dr. Dennar does not oppose Tulane's motion to dismiss the claims asserted under the

---

[48] The United States Fifth Circuit Court of Appeal has opined that although it is within the discretion of the trial court to determine whether to grant an amendment, "discretion" may be a misleading term, as 15(a) "severely restricts the judge's freedom," directing that leave to amend should be freely given when justice so requires. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981).  Accordingly, Rule 15(a) "evinces a bias in favor of granting leave to amend," demonstrating "the policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." Id. "Absent a strong, declared reason for the denial, a reviewing court will hold the denial of a Rule 15(a) motion to be an abuse of discretion." DeGruy v. Wade, 586 F. App'x 652, 655 (5th Cir. 2014).

Louisiana Employment Discrimination Law. Although Tulane argues that Dr. Dennar "inexplicably" incorporated these claims into the Second Supplemental and Amended Complaint, Plaintiff had already withdrawn those claims in her previously filed opposition and Tulane could have easily communicated with opposing counsel to secure a consent judgment on that issue from Plaintiff rather than wasting time and argument on a non-issue.[49] Nevertheless, Plaintiff again withdraws claims under the Louisiana Discrimination Employment statutes.

**2. Abuse of Rights Claim is properly stated and relief is available.**

Tulane's Motion to Dismiss Dr. Dennar's abuse of rights claim is primarily grounded in the disfavored principle of "form over substance." Specifically, Tulane directs the Court's attention to ¶¶ 189-194 of the Complaint and claims that Dr. Dennar failed to identify factual allegations to support her abuse of rights claim.  (Rec. Doc. No. 4-1, p. 5).  That argument is misleading because it fails to consider all allegations preceding the section and focuses only on the cause of action section of the complaints.

Dr. Dennar sets forth an abundance of material factual allegations to support her claims in ¶¶ 11-179 of her Complaint. (Rec. Doc. No. 1) which are adopted in Dr. Dennar's Supplemental and Amended Complaint (Rec. Doc. No. 15) and Second Supplemental and Amended Complaint (Rec. Doc. No. 39). Further, Paragraph 189 under the "Abuse of Rights" section of the Complaint specifically restates and incorporates the *entirety* of those factual allegations.

---

[49] Rec. Doc. 18

Tulane argues that incorporating factual allegations in the fact portion of the complaint in the cause of action section is "woefully insufficient" but provides no legal basis in law or procedure for requiring facts to be plead in the portion of the complaint entitled "cause of actions." Following Tulane's logic results in absurd consequences as the complaint would be over hundreds of pages long if each fact under each cause of action had to be alleged together.[50]

Paragraphs 190-194 set forth the legal bases for the abuse of rights claim, the elements thereof, and the allegation that, based upon the facts set forth in the Complaint, Tulane's actions constituted an abuse of rights for which Dr. Dennar is entitled to damages.[51] Paragraph 193 specifically states that the facts in the Complaint are made part of the action.

Accepting the allegations of fact set forth in Dr. Dennar's Complaint as true, Tulane has: (1) Required Dr. Dennar to perform the duties of Program Director while limiting her title to Co-Director; (2) Failed to exercise its right to promote Dr. Dennar to the rank of Associate Professor; (3) Repeatedly attempted to subvert and subverted Dr. Dennar's ability to perform her role as the Med-Peds Program Director and the Medicine Director for the Internal Medicine Residency Clinic by threatening to reduce the numbers of residents in her program, developing a Resident Evaluation Committee to perform resident's performance reviews and expectation processes, which were previously duties performed by Dr. Dennar as part of her management of

---

[50] FRCP Rule 8 requires only (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

[51] Rec. Doc. No. 1, ¶¶ 190-194.

her Program, failed to invite Dr. Dennar to the Resident Evaluation Committee meetings, and failing to advise Dr. Dennar concerning ACGME visits and outcomes; (4) Impeded Dr. Dennar's access to an evaluation tool, Med-Hub, to review faculty or chief residents; (5) Denied Dr. Dennar's access to Red Wiki which ordinarily enabled Dr. Dennar to perform her duties as Program Director by collaborating with other Program Directors and to gain access to resources needed to prepare for ACGME site visits; (6) Omitted Dr. Dennar's name from credentialing at Children's Hospital (7) Performed a deficient Special Review of the Meds-Peds Program in order to target Dr. Dennar and (8)  Removed Dr. Dennar as Program Director of Meds-Peds[52]. *Supra.*

As Dr. Dennar's employer, Tulane had the right to confer a title upon Dr. Dennar and to define the duties to be performed by her as an employee.  However, if one of the following four conditions are met, a plausible cause of action against Tulane for its abuse of rights exists:

(1) If the predominant motive for it was to cause harm;

(2) If there was no serious or legitimate motive for refusing;

(3) If the exercise of the right to refuse is against moral rules, good faith, or elementary fairness; or

(4) If the right to refuse is exercise for a purpose other than for which it was granted.

Only <u>one</u> of the conditions must exist to justify application of the abuse of rights

---

[52] Rec. Doc. 39  ¶¶207-219

doctrine. *Ballaron v. Equitable Shipyards*, Inc., 521 So. 2d 481, 483 (La. Ct. App.), writ denied, 522 So. 2d 571 (La. 1988).

Here, Dr. Dennar repeatedly alleged that these actions were taken by Tulane with an ongoing intent to retaliate against her.  The predominant motive for all of these actions was to cause Dr. Dennar harm. Moreover, while an employer is generally at liberty to bestow titles and job duties on employees, when the employer deprives an individual continuously in an ongoing pattern and practice of the full emoluments of a position, or recasts the position and the title thereof based on race, these acts are surely against good morals, are not acts of good faith, and by no means comport with elementary fairness. Tulane may want to resist this claim on the merits.  However, such a contest has yet to be waged and is premature. Dr. Dennar has stated a claim of abuse of rights upon which relief may be granted.

Tulane further argues that Dr. Dennar's abuse of rights claim is prescribed to the extent that any of the allegations supporting that claim occurred more than a year prior to October 1, 2020, the date on which Dr. Dennar's Complaint was filed. On the contrary, because Dr. Dennar's factual allegations are continuing in nature, the continuing tort doctrine applies and the one-year liberative prescription period applicable to delictual actions does not bar Dr. Dennar's claim.

> A continuing tort presents another exception to Louisiana's one-year prescriptive period for delicts, because 'when the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated.'  As the

> Louisiana Supreme Court has stated, 'the continuous nature of the alleged conduct has the dual effect of rendering such conduct tortious and of delaying the commencement of prescription.' For a continuing tort to exist, however, there must generally be continuing wrongful conduct, coupled with continuing damage.[53]

Here, continuing damage and continuing conduct exists, as alleged, which is why additional supplemental complaints were needed. Tulane's attempts to infringe upon Dr. Dennar's management, accountability, and supervision of her Program, as compared to other Directors who had unfettered management, accountability, and supervision of their Programs, was ongoing and unabated, as is Tulane's exercise of its right to conduct the "special review" of Dr. Dennar which she claims is an abuse of right intended to cause her harm.

All actions from the discriminatory statements made by the Dean at the start of her employment in Paragraphs 17-19 in 2007 are evidence of the predominant motive to cause discriminatory harm and ultimately did cause Dr. Dennar harm as the Dean was the decision maker in removing her as Program Director on February 11, 2021.

Moreover, Tulane's removal of Dr. Dennar from her position as Program Director is well within any statute of limitations that Tulane may wish to claim. Dr. Dennar's damage as a current Tulane employee is also ongoing. Dr. Dennar's success at Tulane and Dr. Dennar's reputation are

---

[53] *Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 323 (5th Cir. 5/10/02).

damaged by Tulane's ongoing abuse of rights. Therefore, Tulane's motion to dismiss Dr. Dennar's abuse of rights claim should be denied.

### 3. Dr. Dennar timely preserved and properly asserted her Title VII claims.

Tulane's argument regarding a failure to preserve claims is that discriminatory comments made in 2007 by the Dean not wanting to "change the face of Tulane" and the failure to recognize Dr. Dennar's role as Program Director in 2009 are untimely and not included in the charge.

As alleged, Dr. Dennar timely filed several EEOC charges as various employment actions occurred. That charge included a claim of ongoing retaliation and ongoing hostile work environment.  Although a charge of discrimination must be filed with the EEOC within 300 days of the alleged improper action, when the nature of the wrongdoing is ongoing, as long as at least one of the incidents of ongoing conduct occurs within 300 days before filing the EEOC charge, the entirety of the ongoing hostile work environment claim is preserved.  Dr. Dennar's ongoing hostile work environment claim is not time barred because the evaluation of time limitations for hostile work environment claims differ from the time limitation standard applied to claims arising from discrete discriminatory acts.

 In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court drew a distinction between hostile work environment claims and discrete acts. The Court recognized that discrete acts including "termination, failure to promote, denial of transfer, or

refusal to hire" are separate unlawful employment practices that must be filed within the filing period to be actionable. *Id.* at 114.

However, a hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). *Id* at 117. With respect to hostile work environment claims, the Court noted that "their very nature involves repeated conduct" that occur "over a series of days or perhaps years." *National Railroad*, 536 U.S.101 at 115.  As such,

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 117.

Tulane claims the allegations contained in Paragraphs 17-19 are "time-barred by at least a decade." (Rec. Doc. No. 4-1, p. 7).  Paragraphs 17-19 provide:

17.

> When Dr. Dennar originally interviewed for a Directorship at Tulane in 2008, she was informed by Dr. Lee Hamm ("Dr. Hamm"), who was then Chair of the Internal Medicine Department, and now Dean of the Tulane School of Medicine, that Tulane did not "want to change the face of Tulane" and that "I'm afraid that white medical students wouldn't follow or rank

favorably a program with a black program director; [however] we'll be comfortable with you sharing a position as co-director with the previous [white male Med-Peds] program director."

18.

Based on those limitations and restrictions for over a full year, Dr. Dennar shared a 50% title but did 100% of the supervisory and program planning work which, based upon Dr. Hamm's inappropriate remarks, was in an effort to mask her leadership of the program.

19.

During that year in which Dr. Dennar assumed full leadership, she steered the Med-Peds Residency Program to full accreditation by the Accreditation Council for Graduate Medical Education ("ACGME") for the first time.  Nonetheless, Tulane refused to publicly disclose Dr. Dennar's ascension into this position, to the Accreditation Counsel for Graduate Medical Education ("ACGME") and the National Residency Match Program ("NRMP") until one year
later in December 2009 after Dr. Hamm was able to obtain another white male to function as her Assistant Program Director to aid in recruiting white Residents.

The allegations in ¶¶ 17-19 do not give rise to a discrete act, or an actionable separate

unlawful employment practice. However, these allegations are material to the ongoing hostile

work environment to which Dr. Dennar has been and continues to be subjected. "If an act

contributing to the claim occurs within the filing period, *the entire time period* of the hostile

environment may be considered by a court for the purposes of determining liability." *Morgan*

536 U.S. at 117.  Dr. Dennar properly complained of acts giving rise to the ongoing hostile work environment within the filing period for both EEOC charges in 2018 and in 2021. Thus any claims from 2007 forward must be considered by a court for the purpose of determining liability. Therefore, her claim is timely and should not be dismissed.

### 4. Claims under Section 1981 are timely.

Defendant generally argues that a Section 1981 claim with respect to contract formation prescribed in one year and any acts occurring post-contract formation prescribed in four years. Plaintiff does not dispute that general proposition of law but disputes when the clock starts on those claims and whether Plaintiff set forth the claim the Defendants is seeking to dismiss.

### a. Contract Formation Claims

Plaintiff has not alleged a contract formation claim in 2007-2008 and Defendant cannot point to any allegation that states a claim regarding contract formation.[54] The allegations relating to 2007-2008 regarding discriminatory comments by the Dean and her requirement to serve as co-Program Director relate to the intent to discriminate, not the formation of the contract as she was already under contract as an employee of Tulane at that time.

The allegations related to the 2018 contract is not a claim for contract formation, as the contract was successfully negotiated to remove the discriminatory condition, however, as stated

---

[54] Rec. Doc. 1  ¶¶17-19

within the allegation itself, those actions serve as proof of Tulane's *intent* to discriminate compared to other white program directors.

Plaintiff has alleged a contract formation claim for failure to promote in 2019, 2020, and 2021.[55] Most recently, Dr. Dennar had a contract in place with Tulane until June 30, 2021. Dr. Dennar removed as Program Director on February 11, 2021.[56] To date, Tulane has failed to provide Dr. Dennar with her annual reappointment letter and Plaintiff does not know if she will be paid at the end of this month. Tulane has failed to form a new contract for the upcoming year based on discriminatory motives and has in effect, constructively discharged Dr. Dennar. With respect to the contract formation claims from 2019 forward, which are the only claims advanced; the Motion to Dismiss is without merit and should be denied as they are within the one year prescriptive period from the filing of the first suit.

### b.  Post-Contract Formation Claims

Plaintiff filed suit on October 1, 2020. [57] The federal statute of limitations of four years prior to the filing of the suit is October 1, 2016, not May 17, 2017. Defendant is erroneously using the date of the filing of the Second Amended Complaint on May 17, 2021 as the point of

---

[55] Rec. Doc. 39  ¶232
[56] Rec. Doc. 39  ¶217
[57] R. Doc. 1

time in which to look back. The Second Amended Complaint relates back to the original Complaint filed on October 1, 2020 as the amendment asserts a claim "that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[58]   Defendant has not argued that the Second Amended Complaint does not relate back.  As a result, all post-contract formation allegations which are actionable from October 1, 2016 on which are not related to contract formation are timely filed.

The allegations complained of by Defendant that pre-date October 1, 2016 are the discriminatory statements made by Dean Hamm upon hiring Dr. Dennar in 2008 and Dean Hamm's insistence that Dr. Dennar share the role of Program Director of Meds-Peds which are also the subject of a Motion to Strike in ¶226 of the Second Amended Complaint and ¶¶17-19 of the Complaint.[59] These allegations as explained in the Second Amended Complaint are to assert the intent by Tulane to discriminate against Dr. Dennar which is one element in a prima facie case of race discrimination and/or hostile work environment.[60]

All other allegations in the Complaint, First Amended Complaint and Second Amended Complaint took place yearly on or after October 1, 2016 including the interference by Dr. Wiese

---

[58] R. Doc. 36, FRCP 15.
[59] R. Doc 1, ¶¶7 and R. Doc. 39 ¶226
[60] R. Doc. 39 ¶226

and the requirement to use the discriminatory ATLAS program when recruiting.[61] Further Dr. Dennar was recently removed as Program Director on February 11, 2021 during the term of her latest contract with Tulane which also forms the basis of the Section 1981 post-contract formation claim.[62]

Defendant argues that the allegations regarding ATLAS recruiting program, denial of privileges, benefits, increased workload, and credentialing issues are "contract formation claims" and therefore barred by the one year statute of limitations for contract formation claims under *Jones*.[63]

Plaintiff disagrees for three reasons. First, the allegations are not related to contract formation because they all occurred *after* her contract was entered into and are therefore subject to the four year statute of limitations which started on October 1, 2016. Dr. Dennar was required to use the ATLAS recruiting program year after year and the program was unrelated to the "formation" of her annual reappointment contract.[64] The use of the discriminatory ATLAS tool was part of her terms and conditions for working at Tulane as she was required to recruit other

---

[61] Rec. Doc. 39  ¶¶229-232
[62] Rec. Doc. 39  ¶217
[63] R. Doc. 39 ¶¶225, 230-232 and R. Doc. 1 §16-19, §31(5)
[64] R. Doc. 1 ¶31 (5)

residents into the Tulane Meds-Peds program.[65]

With respect to the denial of advancement opportunities, privileges, benefits, increased workload, and credentialing issues, these events also happened **after** contract formation. For example, she was denied access to benefits and privileges given to Program Directors because Dr. Wiese interfered with her contractual responsibilities as program director.[66] Dr. Dennar also alleges acts of retaliation resulting in issues with credentialing and increased workload which occurred during the contractual term, not during the formation of the contract.[67] Thus allegations related to ATLAS recruiting program, denial of privileges, benefits, increased workload, and credentialing issues are timely because they were filed within four years of October 1, 2016 and also occurred annually which means only one of those incidents needs to occur within the four years under the continuous violation doctrine.[68]

Second, the only allegations which are arguably related to contract formation are the denial of advancement opportunities and the base salary issues. The allegations regarding the reduction of base salary in paragraph 227 of the Second Amended Complaint specifically states that it is alleged to prove the intent to discriminate and not actionable because Dr. Dennar

---

[65] R. Doc. 1 ¶31 (5)
[66] 66 R. Doc. 39 ¶229
[67] 67 R. Doc. 39 ¶¶235-237
[68] *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)

ultimately received the full salary. Plaintiff makes the allegation in compliance with meeting their burden of a prima facie case of the intent to discriminate. Under *Turner,* these allegations form the basis of the Plaintiff's mixed-motive argument as to whether racial animus existed as a motivating factor for the disparate treatment at Tulane as compared to other Program Directors. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337 (5th Cir. 2007). Finally, the allegation related to denial of advancement of opportunity is also part of the continuous violation doctrine argument because it occurred year to year when Dr. Dennar was failed to be promoted. As alleged in the Complaint, Dr. Dennar was expected to be promoted to Associate Professor within 5- 7 years after receiving the title of Program Director in 2009, meaning she was expecting advancement at least after 7 years or 2016 and has not received it year after year well within the post-contract prescriptive period.[69] Even if the failure to promote is related to contract formation, her claims for 2019, 2020, 2021 are still timely as suit was filed in 2020 and it is a one year prescriptive period.

Plaintiff has presented other post-contract formation claims that are within both one year and four years statute of limitations. For example, Plaintiff has presented evidence of false press releases that claim Tulane has a legitimate reason to remove Dr. Dennar from the Med-Peds

---

[69] Rec. Doc. 1, ¶¶16, 113, Rec. Doc. 39 ¶232

program.[70] These statements were part of an illegitimate process and contrary to the contractual

obligations owed to Dr. Dennar.[71] The termination and illegitimate process occurred within the

last six months and discovery regarding those actions was even more recent. There is certainly

no time limitation to those contractual claims. The motion to dismiss Section 1981 contract

claims is without merit and should be denied.

B.      **Rule 12(f) Standard**

Under Rule 12(f), the Court "may order stricken from any pleading . . . redundant,

immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Yet,

> (i) It is well-known that 'the action of striking a pleading should
> be sparingly used by the courts . . . . It is a drastic remedy to be
> resorted to only when required for the purposes of justice [and]
> should be granted only when the pleading to be stricken has no
> possible relation to the controversy.'    (citations omitted).
> Furthermore, '[a] disputed question of fact cannot be decided on
> motion to strike.'    (citations omitted). Additionally, 'courts
> generally are not willing to determine disputed and substantial
> questions of law upon a motion to strike' absent some 'showing of
> prejudicial harm to the moving party.' (citations omitted). When
> such circumstances are present, the court should 'defer action on
> the motion and leave the sufficiency of the allegations for
> determination on the merits.' (citations omitted). As such, [a]ny
> doubt about whether the challenged material is redundant,
> immaterial, impertinent, or scandalous should be resolved in favor
> of the non-moving party.'  (citations omitted).

---

[70] Rec. Doc. 39 ¶¶206-222
[71] Id.

*Stipe v. Tregre*, No. 15-2515, 2015 WL 5012375 at *2 (E.D. La. Aug. 19, 2015) (Lemelle, J.).[72]

Notably, a presumption against granting motions to strike exists. *Id.*

An allegation is immaterial to the lawsuit when the challenged allegations do not bear on the subject matter of the litigation. *Bayou Fleet P'ship, LLC v. St. Charles Parish,* 2011 WL 2680686, at *5 (E.D.La. Jul. 8, 2011)."Even when technically appropriate and well founded," a motion to strike should not be granted unless the moving party demonstrates prejudice.[73]

Here, Tulane seeks to strike ¶¶ 17-19  from Dr. Dennar's Complaint and ¶226 from Dr. Dennar's Second Amended Complaint but do not argue any prejudice which is the first reason the motion fails as a matter of law. Contrary to Tulane's argument, the allegations set forth in ¶¶ 17-19 and ¶226 do not give rise to a separate actionable unlawful employment practice.[74]   Instead, the allegations set forth are made part of Dr. Dennar's ongoing hostile work environment claim and retaliation claim. Under *Turner,* these allegations form the basis of the Plaintiff's mixed-motive argument as to whether racial animus existed as a motivating factor for her removal as Program Director and the disparate treatment at Tulane as compared to other Program Directors. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337 (5th Cir. 2007). The facts alleged are material to Dr. Dennar's history of employment with Tulane as set forth in  the Complaint, the Supplemental and Amended Complaint, and the Second Supplemental and Amended Complaint.

---

[72] This unreported case is attached hereto as Exhibit A.

[73] Abene v. Jaybar, LLC, 802 F. Supp. 2d 716, 723 (E.D.La.2011) (internal quotation marks omitted); *accord* Diesel Specialists, LLC v. MOHAWK TRAVELER M/V, Nos. 09–2843, 11–1162, 2011 WL 4063350, at *1 (E.D. La. Sept. 13, 2011).

[74] Rec. Doc. No. 4-1, p. 9.

Therefore, the allegations are material and pertinent to Dr. Dennar's claims and should not be stricken.

The second reason the motion fails is because by moving to strike, Tulane is essentially requesting that this Court to make a determination on the credibility of the statements as qualifying as "impertinent" and/or "scandalous." Courts will not decide a disputed question of fact on a motion to strike. *Gonzalez v. State Farm Mut. Auto. Ins. Co.,* 2011 WL 2607096 at*5 (E.D. La. July 1, 2011). As demonstrated *supra* these allegations go to the heart of discriminatory animus and are material to the prima facie case the Plaintiff has alleged.

Tulane further seeks to strike allegations preceding October 1, 2019, which are pleaded in support of Dr. Dennar's abuse of rights claim.[75]   Specifically, Tulane moves the Court to strike ¶¶28-104, 116-117, and 134-137, which predate October 1, 2019.  Again, these facts are not only germane to Dr. Dennar's abuse of rights claim, but are also germane to Dr. Dennar's claims of ongoing hostile work environment and retaliatory hostile work environment.

The allegations are material and relevant to the claims asserted. Even assuming *arguendo* that certain allegations do not form the basis of timely abuse of rights claims, those same allegations certainly have been properly asserted and are material to Dr. Dennar's ongoing claims of hostile work environment. Therefore, the allegations are materially relevant and should not be stricken- notwithstanding the fact that they shine light upon Tulane's alleged wrongful conduct.

---

[75] Rec. Doc. No. 4-1, p. 10.

III.   CONCLUSION

For the foregoing reasons, the 12(b)(6) motion to dismiss abuse of rights and Title VII

claims should be denied.  Furthermore, the motion to strike should be denied, in its entirety.

Respectfully submitted,

LOWE, STEIN, HOFFMAN, ALLWEISS
   & HAUVER, L.L.P.

*/s/ Melanie C. Lockett*
MICHAEL R. ALLWEISS (#2425)
MELANIE C. LOCKETT (#30601)
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone:   (504) 581-2450
Facsimile:   (504) 581-2461
Attorneys for Princess Dennar, M.D.


            -and-

/s/ JESSICA VASQUEZ
JESSICA VASQUEZ (#27124)
VASQUEZ LAW OFFICE
400 Poydras Street, Suite 900
New Orleans, Louisiana 70130
Telephone: (504) 571-9582
Facsimile: (504) 684-1449
jvasquez@vasquezlawoffice.com
Attorneys for Princess Dennar, M.D.