# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PRINCESS DENNAR, M.D.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 2:20-cv-2679** |
| **THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND** | * | **JUDGE GREG GERARD GUIDRY** |
| | * | **MAGISTRATE JUDGE KAREN WELLS ROBY** |

### SUR-REPLY IN SUPPORT OF OPPOSITION TO RULE 12(b)(6) MOTION TO DISMISS AND RULE 12(f) MOTION TO STRIKE

**MAY IT PLEASE THE COURT:**

Princess Dennar, M.D. ("Dr. Dennar"), through undersigned counsel, respectfully submits this Sur-Reply to address legal arguments raised by Defendant, The Administrators of the Tulane Educational Fund ("Tulane") in its Reply.  (Rec. Doc. No. 53).

## I.     ABUSE OF RIGHTS CLAIM

Tulane argues that the 238 paragraphs of factual allegations are insufficient to set forth an abuse of rights claim because each of the facts are not specifically spelled out in the cause of action section and the cause of action section sets forth the elements of the abuse of rights claim.[1]  Tulane cannot dictate the form of Plaintiff's Complaint.  In determining whether a

---

[1] R. Doc. 50-2, pg. 2

plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. See *Norris v. Hearst Trust*, 500 F.3d 454, 461, n. 9 (5th Cir. 2007); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640, n. 2 (5th Cir. 2005). Thus, all the paragraphs must be reviewed *in toto* with respect to the cause of actions and Plaintiff is not required to reiterate each fact in multiple sections of the Complaint as Tulane is attempting to dictate.

1.   **The three allegations Tulane cites are either not prescribed or prove discriminatory animus.**

Paragraphs 17-19 are discriminatory comments made by Dean Hamm as he was taking the employment action of appointing Dr. Dennar to be program director for Med-Peds and states:

17.

When Dr. Dennar originally interviewed for a Directorship at Tulane in 2008, she was informed by Dr. Lee Hamm ("Dr. Hamm"), who was then Chair of the Internal Medicine Department, and now Dean of the Tulane School of Medicine, that Tulane did not "want to change the face of Tulane" and that "I'm afraid that white medical students wouldn't follow or rank favorably a program with a black program director; [however] we'll be comfortable with you sharing a position as co-director with the previous [white male Med-Peds] program director."

18.

Based on those limitations and restrictions for over a full year, Dr. Dennar shared a 50% title but did 100% of the supervisory and program planning work which, based upon Dr. Hamm's

> inappropriate remarks, was in an effort to mask her leadership of
> the program.
>
> 19.
>
> During that year in which Dr. Dennar assumed full leadership, she
> steered the Med-Peds Residency Program to full accreditation by
> the Accreditation Council for Graduate Medical Education
> ("ACGME") for the first time. Nonetheless, Tulane refused to
> publicly disclose Dr. Dennar's ascension into this position, to the
> Accreditation Counsel for Graduate Medical Education
> ("ACGME") and the National Residency Match Program
> ("NRMP") until one year later in December 2009 after Dr. Hamm
> was able to obtain another white male to function as her Assistant
> Program Director to aid in recruiting white Residents

As argued in the Opposition, the comments made by Dean Hamm, are not submitted as

actionable discrimination, but as evidence of motive, intent, preparation, and plan, which are all

admissible under FRE 404(b). Notably, the case law relied upon by Tulane to support their

"stray comment" argument is at the dispositive motion stage.[2]

Importantly, in indirect evidence cases, courts apply a less demanding standard because

"the discriminatory remarks are just one ingredient in the overall evidentiary mix." *Goudeau v*

*National Oilwe*, 793 F.3d 470, 475 (5th Cir. 2015) (holding that discriminatory remarks are

relevant at the pretext stage and a less "demanding test applies"). Under this less demanding

standard, the plaintiff must show that the comments involve "(1) discriminatory animus (2) on

---

[2] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010)

the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker." *Squyres v. Heico Cos., L.L.C.,* 782 F.3d 224, 236 (5th Cir. 2015).

In this case, the allegations show discriminatory animus by the decision maker who both appointed and removed Dr. Dennar as program director and they should be reviewed as part of the "overall evidentiary mix." Moreover, it appears from public comments that Dean Hamm denies making the remark--that denial in the face of countervailing evidence  goes to his credibility which should not be at issue at the pleading stage.

Paragraph 57-58 relate to the attempted reduction of the Meds-Peds residents by Dr. Wiese.

57.

In response to concerns expressed by the black female Residents and Dr. Dennar in April 2018, Dr. Wiese threatened to permanently reduce the number of Residents in Dr. Dennar's program from six to four and further subverted Dr. Dennar's ability to perform her role as the Med-Peds Program Director and the Medicine Director for Internal Medicine Residency Clinic.

58.

In July 2018, Dr. Dennar received an email from Dr. Wiese's Assistant Program Director ("APD"), Dr. Anthony Marsh, informing her that he had been asked by Dr. Wiese to form an ambulatory based Resident Evaluation Committee that will be known as the Clinic Educational Committee ("CEC"). The plan was to have the committee review resident's performance and to design /develop program wide expectation processes to enhance the clinic experience

for residents.

These acts started in 2018 but continued until Dr. Dennar was removed as program director on February 11, 2021.[3] Dr. Wiese's discriminatory control over Dr. Dennar's position as Med-Peds program director is at the heart of the case and happened year after year following her appointment to the position.[4] Tulane concedes in their Reply that these 2018 acts are covered under the applicable law and agrees that "[f]or a continuing tort to exist… there must generally be continuing wrongful conduct, coupled with continuing damage" *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 323 (5th Cir. 2002).[5] Thus, it is unclear why this second allegation is even mentioned in Tulane's Reply.

The last allegations, Paragraph 116 states as follows:

> 116.
> Specifically, on July 8, 2018, Dr. Dennar's MedHub access was suddenly removed in response to which Dr. Dennar lodged a formal complaint.

Again, Tulane concedes that 2018 allegations fall under the continuing tort exceptions. (Rec. Doc. 50-2 pg. 4). Thus, it is unclear why these allegations are included in their argument. These allegations are continuing in nature because they occurred continuously through February 2021, the date Dr. Dennar was removed from her position as program director.

---

[3] Rec. Doc. 39 §238
[4] Rec. Doc. 39 §229
[5] Rec. Doc. 50-2, pg. 4 "Although Plaintiff's 2018 allegations arguably fall under the continuing tort exception to the one year prescriptive period for abuse of rights claims, the allegations dating to 2007 – 2009 do not.

In sum, of the three allegations with which Tulane takes issue, two Tulane concedes fall into the continuous tort exception and the remaining allegations from 2007-2008 have been included to support a prima facie case of discriminatory animus, as allowed under *Goudeau v National Oilwe*, 793 F.3d 470, 475 (5th Cir. 2015).   These allegations are not ripe for review under more stringent standards.

### 2.   The three allegations Tulane cites support an abuse of rights claim.

The crux of Tulane's argument is that the abuse of rights claim is "rarely applied" and that the Plaintiff should not get two bites at the apple by filing the state claim and the federal claim.[6] Tulane further argues that the cause of action is not plead with specificity.[7]

Regarding specificity, Tulane argues that the Complaint "does not state what legitimate legal right Tulane purportedly was exercising when it allegedly engaged in each of the eight activities."   Paragraph 20-21 of the Complaint set forth the legal right as Plaintiff's employer to appoint Dr. Dennar as the Program Director under the supervision of Dr. Wiese.   Specifically:

20.

---

[6] Rec. Doc. 50-2, pg 4.
[7] Rec. Doc. 50-2, pg 5.   *N.B.*   Defendant has not challenged supplemental jurisdiction in this case. Thus, this argument lacks merit.   Supplemental jurisdiction exists over Plaintiff's state law claims.

Thereafter, when she assumed the status as the sole Director of the Residency Program, the goal posts were shifted such that rotation scheduling for Residents, which was previously under the management and supervision of the Med-Peds Program Director, was moved to the management and supervision of the Internal Medicine Program Director, Dr. JeffreyWiese ("Dr. Wiese"), who also serves concurrently as the Associate Dean of Graduate Medical Education ("GME") and Tulane's Designated Institutional Official ("DIO), such that he had responsibility for ensuring compliance with ACGME institutional requirements.

21.
In his multiple capacities, Dr. Wiese has substantial control and an apparent recognized and conflict of interest permitted by Tulane.

The ensuing harm in violation of moral rules that were contrary to the purpose that Dr. Dennar agreed to be an employee of Tulane is set forth in remaining paragraphs which show how Dr. Wiese controlled her program and subjected Dr. Dennar to discrimination throughout her employment by both Dr. Wiese and Dean Hamm.

As explained in the opposition, Louisiana law recognizes an abuse of rights has been committed if any one of the four separate prongs of the cause of action has been established. The facts already alleged, if proved, most certainly demonstrate that the removal of Dr. Dennar from her position of Program Director could constitute a violation of morals and good faith, which alone sustains an abuse of rights claim. Moreover, it will become clear that the actions giving rise to Tulane's public assertion of the reasons for her removal will, as asserted, be found to be false, pretextual and taken without proper authority or adherence to controlling internal

processes.

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has

explained:[8]

> The complaint (1) on its face (2) must contain enough factual
> matter (taken as true) (3) to raise a reasonable hope or expectation
> (4) that discovery will reveal relevant evidence of each element of
> a claim. "Asking for [such] plausible grounds to infer [the element
> of a claim] does not impose a probability requirement at the
> pleading stage; it simply calls for enough facts to raise a
> reasonable expectation that discovery will reveal [that the elements
> of the claim existed]." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d
> 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,*
> 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Plaintiff has satisfied the *Lormand* and *Twombly* burden and has provided enough factual

matter to raise an expectation that discovery will reveal evidence of the abuse of rights claim.

## II.     2007-2009 ALLEGATIONS ARE EVIDENCE OF ANIMUS

Tulane argues that the allegations in Paragraph 17-18 as discussed *supra* are prescribed

and not mentioned in the EEOC Charge. Tulane makes an assumption that Plaintiff submits

these allegations as "discrete discriminatory acts."[9] Tulane fails to address Plaintiff's argument

with respect to proof of discriminatory animus.  Plaintiff is not trying to "revive" prescribed

causes of actions.  However, prior conduct is relevant and should be considered under F.R.E.

404(b). To be relevant evidence considered as part of a broader circumstantial case, "the

---

[8] Rec. Doc. 50-2, pg. 5
[9] Rec. Doc. 50-2, pg. 6

comments must show: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker.'" *Squyres,* 782 F.3d at 236 (quoting *Reed,* 701 F.3d at 441). In this case, as both prongs are met and these allegations are part of the broader circumstantial case of discrimination.

## II.   CONTRACT FORMATION CLAIM FOR 2019-2021

Tulane argues that there they disagree that there was a failure to promote claim for 2019-2021 but cites no basis for the disagreement. The Complaint clearly states a failure to promote claim in Paragraph 113 and 187 as follows:

113.

> Still, further, Dr. Dennar continues in the junior position of Assistant Professor. Under normal progression, Dr. Dennar would have advanced to Associate Professor within five to seven years. The failure to properly and timely promote her to Associate Professor is based on her status as a black woman and/or in retaliation for her having raised issues of discrimination as there is no legitimate purpose for her having not yet been promoted to Associate Professor with all of the emoluments that such a promotion entails.

A failure to promote claim is a contract formation claim as it would require the creation of a new contract. *Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 699 (5th Cir. 2008). Thus, the contract formation claims are timely and should not be dismissed.

## III.   MOTION TO STRIKE IMPROPER

For the reasons stated above, Paragraphs 17-19 are not "stray remarks" but rather "the discriminatory remarks are just one ingredient in the overall evidentiary mix" *Goudeau v National Oilwe*, 793 F.3d 470, 475 (5th Cir. 2015) and should be allowed at the pleading stage. Further, Tulane has provided no evidence to support that these remarks rise to the level of being scandalous or impertinent.  They cannot, if true, as alleged.  Credibility determinations should not be made upon motion to dismiss and the motion to strike should be denied.

## III.   CONCLUSION

For the foregoing reasons and those stated in Plaintiff's opposition, the 12(b)(6) motion to dismiss abuse of rights and Title VII claims should be denied.  Furthermore, the motion to strike should be denied, in its entirety.

Respectfully submitted,

/s/ JESSICA VASQUEZ
JESSICA VASQUEZ (#27124)
VASQUEZ LAW OFFICE
400 Poydras Street, Suite 900
New Orleans, Louisiana 70130
Telephone: (504) 571-9582
Facsimile: (504) 684-1449
jvasquez@vasquezlawoffice.com
*Attorneys for Princess Dennar, M.D.*