UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PRINCESS DENNAR, M.D.** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 2:20-cv-2679** |
| **VERSUS** | * | |
| | * | **JUDGE GREG GERARD GUIDRY** |
| **THE ADMINISTRATORS OF THE** | * | |
| **TULANE EDUCATIONAL FUND** | * | **MAGISTRATE JUDGE KAREN WELLS** |
| | * | **ROBY** |

**NON-CONFIDENTIAL MEMORANDUM IN SUPPORT
OF DEFENDANT'S MOTION TO FILE UNDER SEAL**

Defendant, The Administrators of the Tulane Educational Fund (hereinafter "Defendant" or "Tulane"), respectfully moves this Honorable Court for the entry of an Order permitting Tulane to file its Opposition to Plaintiff's Motion to Compel with redactions and the exhibits thereto under seal. These documents relate to the accreditation of Tulane School of Medicine by The Accreditation Council for Graduate Medical Education ("ACGME"), the independent entity which governs graduate medical education and establishes accreditation standards for graduate medical institutions. Such documents are typically maintained as confidential, contain information about and provided by non-party residents and faculty with the expectation that confidentiality would be maintained, and discuss the business operations of entities not wholly owned by Tulane, which Tulane does not have the authority to disclose. Tulane has already experienced public notoriety as a result of Plaintiff's statements in the media about her unproven allegations. These documents, taken out of the context of the accreditation process, could harm Tulane's competitive standing, prejudice the jury, and become a vehicle for Plaintiff's further media appearances. Tulane therefore seeks to file its Opposition with

1

redactions and exhibits under seal.[1]

## BACKGROUND

Tulane seeks to file under seal its Opposition Memorandum and the exhibits thereto, which are subject to the parties' Consent Protective Order and are discussed in depth in Tulane's Opposition Memorandum. The parties' Consent Protective Order allows either party to designate "personal identifying information; information relating to complaints or concerns to the ACGME from Tulane residents or employees and investigations, findings, and conclusions thereon by ACGME; documents submitted to or received from the ACGME during the ACGME accreditation or re-accreditation of the Tulane School of Medicine or any department or program and the information contained therein, except the publically published accreditation or re-accreditation status for the Tulane School of Medicine or any Tulane department or program; information regarding patient safety and/or operations at entities not wholly owned by Tulane, which Tulane does not have the authority to publically disseminate; [and] documents relating to any internal or external complaints, grievances, and investigations at Tulane." (R. Doc. 32).

The exhibits to Tulane's Opposition Memorandum contain personal identifying information, information relating to complaints or concerns investigated by the ACGME, the ACGME's re-accreditation process, information regarding operations at entities not wholly owned by Tulane, and documents relating to internal complaints, grievances, and investigations at Tulane, and, as such, were designated as Confidential – Subject to Protective Order in good faith. As the parties agreed not to disclose documents or information marked Confidential except as provided for on the Consent Protective Order, Tulane moves for leave to file its Opposition Memorandum and exhibits thereto under seal in accordance with the disclosure parameters of the Consent Protective Order.

---

[1] Tulane's proposed pleading has been provided to the Court for an *in camera* review.

## LAW AND ARGUMENT

The general right of access to public records and documents, including judicial records and documents, is not absolute. *Reichert v. Starring*, No. 11-2171, 2011 U.S. Dist. LEXIS 107051, at *3 (E.D. La. Sep. 21, 2011) (Vance, J.). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Test Masters Educ. Servs. v. Robin Singh Educ. Servs.*, 799 F.3d 437, 454 (5th Cir. 2015) (quoting *S.E.C. v. Van Waeyenberghe*, 990 F. 2d 845, 846 (5th Cir. 1993)). The Court has the discretion to seal judicial records, "balance[ing] the public's common law right of access against the interests favoring non-disclosure." *Bradley v. Ackal*, 954 F. 3d 216, 225 (5th Cir. 2020) (quoting *Van Waeyenberghe*, 990 F. 2d at 846). The party who seeks to overcome the presumption of access – in this case, Tulane – must show that the "interest in secrecy outweighs the presumption" of access. *Reichert*, 2011 U.S. Dist. LEXIS 107051, at *3. "The 'relevant facts and circumstances of the particular case' inform the factors that a court weighs on both sides." *Id.* (quoting *Belo Broadcasting Corp. v. Clark,* 654 F. 2d 423, 430 (5th Cir. 1981)). Because the information contained in Tulane's Opposition Memorandum and exhibits thereto incorporate confidential information which might harm Tulane's competitive standing if made public, Tulane seeks to file its Opposition Memorandum with redactions and exhibits thereto under seal.

I.   **The right of access does not overcome Tulane's interests in non-disclosure.**

Disclosure of the documents in question "would cause an identifiable, significant harm." *Shell Offshore, Inc. v. Eni Petroleum US LLC*, 2017 U.S. Dist. LEXIS 154798, at *5 (E.D. La. Sep. 22, 2017). The ACGME routinely keeps confidential information relating to the ACGME's institutional review of and site visits to residency programs. Were Tulane to file such

3

information into the record, the public would have access to these documents, which are typically kept confidential.  As the general public is unlikely to be well-versed in the ACGME's confidentiality proceedings, it is likely that these documents, which relate to the ACGME's accreditation of Tulane, would be taken out of context.  Because accreditation documents are not normally made public, the implication would be that Tulane, alone of all of the graduate medical institutions in the country, was subject to constructive criticism by the ACGME intended to lead to improvement in the educational quality of Tulane's graduate medical education programs.  This misunderstanding would damage Tulane's reputation in the medical community and severely harm Tulane's ability to recruit talented faculty and residents.  Courts "have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing." *Ruby Slipper Café v. Belou*, No. 18-1548, 2020 U.S. Dist. LEXIS 161979, at *10-11 (E.D. La. Jan. 8, 2020) (Roby, J) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

The same concerns apply with regards to the jury pool.  The local media has been very active in reporting on Plaintiff's claims, which may have prejudiced the jury pool against Tulane before Tulane has the opportunity to present its case.  The dissemination of documents addressing the ACGME's accreditation of Tulane, presented out of context, could contribute to the media coverage commenced by Plaintiff and cause the jury pool to believe that Tulane had acted wrongly.  *See Pamlab, L.L.C. v. Brookstone Pharm., L.L.C.*, No. 09-7434, 2010 U.S. Dist. LEXIS 120303, at *13 (E.D. La. Oct. 22, 2010) (Knowles, J.) (granting motion to seal based on "negative media campaign" that could "bring about plaintiffs' desired result before a of the parties' peers has a chance to weigh the issues").

4281563-1

The Supreme Court has recognized that the use of "records 'to gratify private spite or promote public scandal'" supports the denial of access to the court's records. *Test Masters Educ. Servs.*, 799 F.3d at 454 (quoting *Nixon*, 435 U.S. at 598). Plaintiff has repeatedly taken to the media with her claims, including an interview on The Today Show. This media frenzy led to a "Do Not Rank Tulane" campaign based on the unsubstantiated and unproven allegations contained in Plaintiff's Complaint, which encouraged applicants to Tulane's residency program to withdraw their applications. Tulane has thus already experienced significant harm – even though Tulane has not been found responsible for any wrongdoing. Plaintiff has already indicated a willingness to try her case in the press. The media should not be given the opportunity to use these confidential documents by accessing them in a public record.

Further supporting the need to seal, these documents contain information provided by non-parties with the expectation that the information would be kept confidential. The ACGME "recognizes that "adherence to confidentiality of the information acquired during the accreditation process is vital to its operation. Intrinsic to accreditation is the promotion of candor within its process, which may include constructive criticism that leads to improvement in the educational quality of an institution or program."[2]

Tulane agrees that candid participation in accreditation proceedings is essential. Much of the information contained in the documents Tulane seeks to file under seal was provided to the ACGME by residents and Tulane faculty members who spoke to the ACGME with the expectation of confidentiality. The residents, in particular, should be protected from public scrutiny: residents are students who must complete a graduate medical education program known as a residency in order to be a fully licensed physician. *See Davis v. Mann*, 882 F.2d 967, 974 (5th Cir. 1989) ("It is well-known that the primary purpose of a residency program is not

---

[2] *See* Policies and Procedures, p. 35, https://www.acgme.org/Portals/0/PDFs/ab_ACGMEPoliciesProcedures.pdf.

employment or a stipend, but the academic training and the academic certification for successful completion of the program."); *see also Abdel-Raouf v. Yale Univ.*, 2015 U.S. Dist. LEXIS 18966, at *7 (D. Conn. Feb. 17, 2015) ("A medical residency is a hybrid position in which the resident is both a student and employee. However, it is primarily a learning position."); *Nigro v. Va. Commonwealth Univ. Med. Coll. of Va.*, 2010 U.S. Dist. LEXIS 123939, at *32 (W.D. Va. Nov. 23, 2010) ("she primarily sought to participate in the medical residency for its promise of professional medical training, rather than for the monetary compensation that was incident to her tenure there"); *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 556 (3d Cir. 2017) ("operation of an ACGME-accredited residency program makes its mission, at least in part, educational"). These residents should not face scrutiny from the public, future employers, or their peers regarding the contents of the documents Tulane seeks to file under seal, all because Plaintiff contends that Tulane – not the residents – acted improperly.

Moreover, the documents discuss the job performance of several non-party Tulane employees by name. These "perceived strengths and weaknesses" of non-parties, who are not the subject of Plaintiff's Complaint, constitute "sensitive, identifying information" which should be filed under seal. *See Cunningham v. Concentrix Sols. Corp.*, No. 4:20-cv-661, 2021 U.S. Dist. LEXIS 140301, at *6 (E.D. Tex. July 28, 2021).

The documents also discuss confidential business operations at medical entities not wholly owned by Tulane (Tulane Hospital is primarily owned by HCA), which Tulane does not have the authority to publically disseminate. These entities are not a party to this lawsuit, are not alleged to have committed any wrongdoing in this lawsuit, and are discussed in the documents Tulane seeks to seal because they have contractual relationships with Tulane. Confidential information about their business operations should not be made part of the public record. *See N.*

6

*Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015) ("sealing may be appropriate where orders incorporate confidential business information").

Given the foregoing, Tulane's interest in sealing these confidential accreditation-related documents prepared by both the ACGME and Tulane clearly outweighs whatever interest the public may have in accessing them.

## II. The test articulated in *Ruby Slipper* weights in favor of sealing the documents.

Tulane notes that this Court has followed the four-factor test established in *Donahue v. Smith* in considering whether documents should be filed under seal when a Protective Order has already been entered in the case. *Ruby Slipper Café*, No. 18-1548 2020 U.S. Dist. LEXIS 161979, at *10-11. Although *Ruby Slipper* is not entirely analogous as Plaintiff has not challenged the confidentiality of the documents at issue, an analysis of the four factors nonetheless supports Tulane's position. The factors considered consist of "(1) the nature of the protective order (i.e., narrow vs. broad, court imposed vs. court approved upon stipulation of the parties); (2) the foreseeability at the time of the original protective order of the [relief] now requested; (3) the parties' reliance on the protective order; and (4) good cause," which "incorporates the balancing test articulated in *Van Waeyenberghe*" addressed *supra*. *Id*.

As explained *supra*, Tulane clearly satisfies the fourth good cause factor. The remaining three factors also support the entry of an Order sealing Tulane's Opposition Memorandum and exhibits thereto. The first factor the Court considers is whether the protective order in place "is the product of the parties' joint consensual stipulation." *Id*. at *13. The Consent Protective Order consists of joint stipulations reached after extensive back-and-forth. (R. Doc. 32). That the parties agreed that the types of documents Tulane seeks to file under seal may be marked confidential supports Tulane's argument that its Opposition Memorandum and exhibits should be filed under seal to avoid violating that confidentiality designation.

7

4281563-1

The second factor the Court considers is whether the relief sought was foreseeable at the time of the entry of the original protective order. *Id.* at *13. Tulane requests that the Court apply the protections established by the Consent Protective Order to Tulane's Opposition Memorandum and exhibits by sealing them from the public record. As specifically envisioned by the Consent Protective Order (R. Doc. 32), Tulane files this Motion to Seal in accordance with the Court's Standing Order on Procedures for Filing Documents Under Seal in Civil Cases. That this procedure "existed and was specifically provided for" in the Consent Protective Order makes it foreseeable that the parties would seek leave to file under seal, and should weigh in favor of the Court granting Tulane's Motion. *See id.* at *14.

The third factor the Court considers is the extent to which the parties relied on the protective order. The Court minimized the impact of this factor when the terms of the protective order contained specific language permitting the relief sought. *Id*. at *15. Nonetheless, it is important to note that the parties specifically modified the Court's form protective order to include "information relating to complaints or concerns to the ACGME from Tulane residents or employees and investigations, findings, and conclusions thereon by ACGME; documents submitted to or received from the ACGME during the ACGME accreditation or re-accreditation of the Tulane School of Medicine or any department or program and the information contained therein, except the publically published accreditation or re-accreditation status for the Tulane School of Medicine or any Tulane department or program; information regarding patient safety and/or operations at entities not wholly owned by Tulane, which Tulane does not have the authority to publically disseminate; [and] documents relating to any internal or external complaints, grievances, and investigations at Tulane," and that Tulane has relied on this expectation of confidentiality throughout the discovery process (R. Doc. 32). Thus, the Court

should consider the parties' reliance on the Consent Protective Order as weighing in favor of granting Tulane's Motion to Seal.

Thus, the factors the Court applied in *Ruby Slipper* clearly support the entry of an Order sealing Tulane's Opposition and exhibits thereto.

## CONCLUSION

For the reasons expressed herein, Defendant, The Administrators of the Tulane Educational Fund respectfully requests that the Court enter an Order allowing Tulane to file its Opposition to Plaintiff's Motion to Compel with redactions and the exhibits attached thereto under seal.

Respectfully Submitted:

By: */s/ Julie D. Livaudais*
    Julie D. Livaudais (La. Bar No. 1183), T.A.
    Walter F. Becker, Jr. (La. Bar No. 1685)
    Rosalie M. Haug (La. Bar No. 37720)
      -of-
    **CHAFFE McCALL, L.L.P.**
    1100 Poydras Street
    2300 Energy Centre
    New Orleans, LA  70163-2300
    Telephone:  (504) 585-7000
    Facsimile: (504) 544-6054
    Email:   livaudais@chaffe.com
                becker@chaffe.com
                haug@chaffe.com

*Attorneys for Defendant, The Administrators of the Tulane Educational Fund*