UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PRINCESS DENNAR, M.D. | * | CIVIL ACTION |
| | * | |
| | * | NO. 2:20-cv-2679 |
| VERSUS | * | |
| | * | JUDGE GREG G. GUIDRY |
| ADMINISTRATORS OF THE | * | |
| TULANE EDUCATIONAL FUND | * | MAGISTRATE KAREN WELLS ROBY |

### REPLY IN SUPPORT OF MOTION TO COMPEL

MAY IT PLEASE THE COURT:

Plaintiff, Princess Dennar, M.D., hereby submits her Reply in support of the Motion to Compel.

### REDACTED DOCUMENTS

Tulane redacted the names of residents from notes of interviews conducted during their internal investigation (the "Special Review" process) and from emails evidencing support of Dr. Dennar.[1] Defendant's arguments boil down to three main points: 1) the names are not relevant because the "business reasons" for removing Dr. Dennar as Program Director do not have to be an accurate reason as long as it is without discriminatory animus and therefore Plaintiff does not need names of interviewees;[2] 2) Tulane believes Dr. Dennar will retaliate against witnesses;[3] and 3) because Dr. Dennar stated that she did not want to reveal the names of certain residents for fear of Tulane's retaliation against them during a deposition in a separate case, Tulane should be allowed to do the same.[4]

---

[1] Exhibit 1- Filed Under Seal-Tulane documents TU_13800, TU_08768-TU_08772, TU_08783, TU_09021-TU_09022, TU_09254, TU_09432, TU_09452 and TU_10153.
[2] Opposition to Motion to Compel Filed Under Seal pg. 9-11
[3] Opposition to Motion to Compel Filed Under Seal pg. 7
[4] Opposition to Motion to Compel Filed Under Seal pg. 8

Page **1** of **10**

*First*, Dr. Dennar cannot examine whether or not the "business reasons" relied upon by Tulane to remove her are *in fact* legitimate and without discriminatory animus if the identity of individuals who made statements about Dr. Dennar that Tulane used as a reason to remove her remains anonymous. If even one motivating factor for the basis for the removal is discriminatory, Plaintiff can prove pretext. Once a defendant presents a legitimate, non-discriminatory reason for its actions, the plaintiff then bears the burden of producing evidence that the proffered reason is pretextual and ultimately, that discrimination was a motivating factor in the defendant's decision. *St. Mary's Honor Center v. Hick*s, 509 U.S. 502, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993)

Even assuming two residents voiced an unhappy experience with Dr. Dennar, what if the remainder of those interviewed expressed highly favorable experiences and support for Dr. Dennar? What if those residents who expressed an unfavorable opinion or experiences had been previously disciplined by Dr. Dennar or received an unfavorable report from her which was not investigated by the "Special Review" committee? Plaintiff is deprived of exploring those circumstances by not knowing who allegedly criticized Dr. Dennar and what motivated those criticisms. It is possible that these criticisms could be similar to routine criticisms that residents voice about some element present in all residency programs.

Tulane is prejudicing the Plaintiff's case by withholding critical witness information that is relevant to Plaintiff's burden of proof. Further, there is no evidentiary support such as a declaration of a resident stating these notes were even an accurate representation of what was said to Tulane by these residents. Plaintiff should not be required to accept the veracity of anonymous statements simply because Tulane represents that they are "legitimate business reasons." *Even if* there were other reasons, one discriminatory motivating factor for removal of Dr. Dennar as program director is sufficient to prove pretext.

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it can be quite persuasive. *Reeves v Sanderson Plumbing Products*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Id.* Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. *Id.* Thus, Plaintiff is entitled to the identity of the individuals.

*Second,* Dr. Denner was removed as program director on February 11, 2021. Dr. Dennar was the first and only black female residency Program Director in the Tulane School of Medicine.[5] In 2009, Dr. Dennar assumed the role of the Co-Program Director of the Medicine Pediatrics Residency Program ("Med-Peds").[6] Over twelve years later, and with no previous complaints of residents regarding fear of retaliation, Dr. Dennar remained an Assistant Professor and was never promoted.[7] She served as Program Director of Med-Peds until her removal by Tulane.[8] Yet now, Tulane claims that these residents fear retaliation when Dr. Dennar is no longer in a position of power over these residents. Tulane's argument that she will somehow retaliate against the residents because Dr. Dennar is "a public figure in the community" is not rational.[9] Dr. Dennar no longer supervises residents in general and many of those interviewed have likely already graduated and left Tulane. Further, the names of individuals who declared their support for Dr. Dennar have been redacted and there is no reason to assume Dr. Dennar would retaliate against someone who said positive comments about her.

---

[5] Rec. Doc. No. 1, ¶ 3.
[6] *Id.* at ¶ 1
[7] *Id.* at ¶
[8] Rec. Doc. 39 ¶217
[9] Opposition to Motion to Compel, pg. 7

*Third,* Tulane made the decision not to compel the identity of the residents that Dr. Dennar testified about at the deposition in the *Okeke v. Tulane*[10] matter. Tulane is represented by the *same counsel* who questioned Dr. Dennar in that matter. Obviously, Tulane made a choice to let the issue go, and Plaintiff has made the opposite choice. Tulane's decision to not compel Dr. Dennar in that case is not binding on the Plaintiff.

Moreover, the fact that Tulane's counsel asked the question seeking the identity of a witness in the case reveals that Tulane's counsel recognized that the identities are important information. Counsel's choice to allow the witness's reluctance (it was not an official position taken by counsel for Dr. Dennar) was counsel's strategic decision and is not authority to support a legal position in this case under these circumstances.

Further, as alleged in her Complaints, throughout her employment with Tulane, Dr. Dennar has been subjected to continuous acts of gender and race based discrimination and an ongoing and retaliatory hostile work environment which includes the way the "Special Review" committee investigated Dr. Dennar and her program and how that impacted the ACGME site visit as biased information travelled from the "Special Review" committee into the hands of ACGME who were given half-truths and incomplete information.

In April of 2018, seven black female Med-Peds residents asserted claims of discrimination against Dr. Wiese with Tulane's Office of Institutional Equity ("OIE").[11] Dr. Dennar also complained to the Accreditation Counsel for Graduate Medical Education ("ACGME") about the discriminatory usurping of her power as program director by Dr. Wiese. Prompted by these complaints, the ACGME did a 2018 site visit report, which Tulane did not include in its exhibits.[12] The 2018 site visit report

---

[10] *Okeke v. Tulane,* 20-CV-450 (EDLA)( On appeal to 5th Cir.).
[11] *Id.* at ¶¶ 28-30
[12] The ACGME effort is unknown and perhaps will remain unknown as the ACGME has resisted discovery and deposition. In fact, communications from Tulane to the ACGME reveal Tulane's disagreement with ACGME's methods and

noted violations including a conflict of interest arising out of Dr. Wiese's dual roles as both Dr. Dennar's DIO supervisor and as program director of Internal Medicine with control over Dr. Dennar's residents, resident scheduling, and program.

After the 2018 ACGME site visit, both Meds-Peds and Internal Medicine were ultimately cited and put on "warning" status by ACGME. Yet, Tulane chose only to target Dr. Dennar by creating a special rule to invoke a "Special Review" of her program only, not Dr. Wiese's program. The "Special Review" was a farce and recommended removal of Dr. Dennar. This is readily apparent considering the fact that Dr. Dennar was removed as Program Director *after* the "warning" status had been lifted by ACGME.

ACGME was later given the tainted "Special Review" report which was riddled with inconsistencies and misrepresentations. ACGME likely assumed Tulane's report was reliable and credible, when in fact, it was not. Therefore, ACGME's subsequent report is only a mere reflection of the picture Tulane presented- not evidence of what actually transpired at Tulane.

Significantly, Dr. Dennar was excluded from certain ACGME processes subsequent to her engagement in protected activity.[13] Specifically, notwithstanding her request, Tulane did not advise Dr. Dennar regarding ACGME meetings or the results of meetings even though this information is routinely provided to other Program Directors.[14] Dr. Dennar's name was also omitted from credentialing at Children's Hospital, a new site of training for physicians in her Program. Importantly, a physician cannot practice at a hospital when they have not been credentialed at that hospital. As such, Dr. Dennar was excluded from fulfilling her professional obligations. Notably, the Pediatric Program Director, a white male, who had not engaged in protected activity, like Dr. Dennar, faced no such impediment.

---

conclusions.
[13] *Id.* at ¶ 128
[14] *Id.* at ¶ 129

Moreover, Tulane restricted Dr. Dennar's access to tools intended to facilitate the fulfillment of Dr. Dennar's professional duties. Tulane disabled Dr. Dennar's access to an evaluation tool, Med-Hub, which enables users to review faculty or chief residents. Similarly, Dr. Dennar's access to duty hour reporting for rotations was removed, so she was unable to confirm that rotations were scheduled in accordance with duty hour restrictions.[15] On October 20, 2019, Dr. Dennar's Red Wiki access was denied just two days before the ACGME's institutional site visit.[16] Red Wiki provides tools which would ordinarily enable Dr. Dennar to perform her duties as Program Director by collaborating with other Program Directors, reviewing institutional citations, and obtaining resources needed to prepare for an ACGME site visit.[17] Tulane actively subverted and impaired Dr. Dennar's access to these tools which impeded her ability to prepare for a ACGME site visit.[18]

1.  **<u>No legal basis to withhold names of relevant witnesses.</u>**

Other than a general complaint about the media coverage of this case and unfavorable hashtags on Twitter, defendants have provided no basis to withhold names an cite no legal authority justifying such action and the direct deprivation of Plaintiff's ability to examine claimed sources of adverse information. When Plaintiff examines the "Special Review" committee representatives will Tulane inevitably take the position they will not give the names of the people interviewed. Plaintiff is forced to simply trust their notes are fully accurate and complete and that motive and conduct is pure and anointed.[19]

---

[15] *Id.* at ¶¶ 64-65
[16] *Id.* at ¶ 122
[17] *Id.* at ¶ 121.
[18] *Id.* at ¶ 123
[19] Documents reveal serious challenges to the entire "Special Review" process and actions. There is no basis to reward Tulane with the imprimatur of total credibility on Tulane's *ipse dixit* just because Tulane contends that the "Special Review" committee provided insulation between Dr. Wiese, Dr. Hamm, and Dr. Dennar's removal from her long held position as Program Director. This is all the more reason to reveal the names as Tulane has argued elsewhere that Dean Hamm was the decision maker in removing Dr. Dennar.

Tulane cites law regarding retaliation and pretext that in fact *supports* disclosing the names in an effort to prove *discriminatory animus*. The Plaintiff rightfully states that the names are important to assess the credibility of *Tulane*'s position, meaning Plaintiff is not challenging whether the residents felt as if Dr. Dennar was going to retaliate against them but whether the notes themselves are fabricated, misrepresented, or have been influenced in one way or another by *Tulane*. Tulane has put this information at issue because they allege that the Special Review Committee "recommended" removal **because of these interviews wherein residents express fear of retaliation**[20]. Tulane gives no explanation for the redactions of witnesses who sent letters of support on behalf of Dr. Dennar.[21]

Relevant information encompasses any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *Sundown Energy, L.P. v. Haller*, Civil Action No. 10-4354 (E.D. La. 10/26/2011). Relevancy is broadly construed, and a request for /discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. *Id.* Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed. *Id.*

The names of these individuals are probative of the retaliation claim and pretext arguments. To the extent any resident expressed a fear of retaliation, without knowing the name we cannot examine the level of concern, the actual reason for concern, the environment in which the concern was expressed, and whether any expressed concern was created or influenced by the fact that it was *Tulane* interviewing the student in connection with a special review of Dr. Dennar.[22] The point made by Tulane regarding Dr. Dennar's expressed fear of retaliation towards residents by Tulane during a deposition taken in a separate case is *exactly* why the credibility of the notes maintained by Tulane must be reviewed.

---

[20] Opposition to Motion to Compel Filed Under Seal pg. 9
[21] Exhibit 1- Filed under seal
[22] Facts produced in discovery reveal information calling into question the structure, legitimacy, timing and conduct of the "Special Review" committee.

Plaintiff bears the burden of proving that this "reason" is pretexual and the removal was in fact, in retaliation for her complaints to ACGME and to Tulane about discrimination at Tulane. It can do so by examining the witnesses who made the statements who either may have been: 1) influenced by Dr. Gladden to give negative information about Dr. Dennar as indicated by resident Nathan Glasser; 2) coerced by Tulane into giving negative information about Dr. Dennar or 3) a disgruntled resident who was not happy with Dr. Dennar at that time for unrelated reasons.

Nevertheless, if Tulane influenced these residents into giving false information about Dr. Dennar or ignored easily ascertainable evidence of bias, Tulane's investigation would have been performed with discriminatory animus and a predetermined outcome- to satisfy the objective to get rid of Dr. Dennar in retaliation against her for asking the ACGME to investigate allegations of discrimination. Moreover, if false or tainted information was given to the "Special Review" committee and then to ACGME, the entire investigation and all of Tulane's business reasons for removing Dr. Dennar were motivated by unlawful discrimination.

## **OUTSTANDING DISCOVERY REQUESTS**

It is concerning that Tulane fails to remember the third Rule 37 conference which occurred during the break in the status conference with this Court on July 8, 2021. Plaintiff specifically asked Tulane if the conversation would serve as the Rule 37 Conference. Tulane agreed that it the discussion was sufficient to satisfy the Rule 37 conference requirement as the parties were at an *impasse*. Further, after the two Rule 37 Conferences in May, 2021, Plaintiff did not agree to accept the objections lodged by Tulane. Besides those requests that were resolved, the parties maintained their positions and those requests were ripe for a motion as supplemental production could never cure the parties' differences over objections as confirmed in the letters written to Tulane memorializing the agreements and disagreements between the parties as set forth in the Exhibits to the Motion to Compel.

Further, based on Tulane's Opposition the following requests are still outstanding:

**REMAINING ISSUES FOR REQUEST NO 13**

Tulane concedes that they will provide a privilege log and will supplement with further discovery but has not indicated when the supplement will be received.

**REMAINING ISSUES FOR REQUEST NO 17**

Tulane has not opposed this request to compel No. 17.

**REMAINING ISSUES FOR REQUEST NO 41**

Plaintiff maintains that the scope of the request should be frome 2018 forward as there may be emails regarding the creation of the Special Review Committee that are relevant to this request.

**REMAINING ISSUES FOR REQUEST NO 49**

Plaintiff's search included DIO in conjunction with other search terms. There is no reasonable explanation as to why Tulane refuses to run the search for the word DIO in conjunction with other limiting terms.

**REMAINING ISSUES FOR REQUEST NO 50**

Tulane has not opposed the Motion for Request No. 50

**REMAINING ISSUES FOR REQUEST NO 51**

Tulane has not opposed the Motion for Request No. 51

**REMAINING ISSUES FOR REQUEST NO 53**

Tulane states that it should not have to respond to requests in written correspondence but the correspondence was a result of a Meet and Confer over a properly submitted request. The purpose of a Rule 37 conference would be thwarted if parties could not attempt resolution of discovery requests via written correspondence.

**REMAINING ISSUES FOR REQUEST NO 54**

Plaintiff has a failure to promote claim and discovery is relevant for the entire period she worked.[23]

**REMAINING ISSUES FOR REQUEST NO 58**

Tulane states that it should not have to respond to requests in written correspondence but the

---

[23] Rec. Doc. 1 §16

correspondence was a result of a Meet and Confer over a properly submitted request. The purpose of a Rule 37 conference would be thwarted if parties could not attempt resolution of discovery requests via written correspondence.

**REMAINING ISSUES FOR REQUEST NO 59**

Tulane has not opposed the Motion for Request No. 59

WHEREFORE, Plaintiff, Dr. Princess Dennar, prays that her Motion to Compel be granted and that Defendant be ordered to supplement their production and remove redactions within ten days.

Dated: August 15, 2021

/s/ **MICHAEL R. ALLWEISS**
LOWE, STEIN, HOFFMAN, ALLWEISS
& HAUVER, L.L.P.
MICHAEL R. ALLWEISS (#2425)
MELANIE C. LOCKETT (#30601)
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139
Telephone: (504) 581-2450
Facsimile: (504) 581-2461
*Attorneys for Princess Dennar, M.D.*

-and-

/s/ **JESSICA VASQUEZ**
JESSICA VASQUEZ (#27124)
VASQUEZ LAW OFFICE
400 Poydras Street, Suite 900
New Orleans, Louisiana 70130
Telephone: (504) 571-9582
Facsimile: (504) 684-1449
jvasquez@vasquezlawoffice.com
*Attorneys for Princess Dennar, M.D.*